460 P.2d 48

**CIVIL SERVICE EMPLOYEES INSURANCE COMPANY, Appellant and Cross Appellee,**

**v.**

**Fred ROBERTS, Appellee and Cross Appellant.**

**No. 2 CA–CIV 586.**

Court of Appeals of Arizona.

Division 2.

July 22, 1969.

Rehearing Denied Sept. 5, 1969.

Review Denied Oct. 21, 1969.

Claborne & Severyn, by John L. Claborne, Tuscon, for appellant and cross-appellee.

W. Mercer Bouldin, Tucson, for appellee and cross appellant.

MOLLOY, Chief Judge.

In this case we are called upon to construe and apply a permissive use clause in what has been referred to as the "drive other cars" coverage [1] of an automobile liability insurance policy. The question presented is whether the use of a particular vehicle was "without the permission of the

1. See 7 Appleman, Insurance Law and Practice § 4455.

Title to the Jeep was in James M. Hennessy, Jr. (hereinafter Mr. Hennessy), the father of James M. Hennessy III (hereinafter referred to by his nickname "Mike"). During the summer of 1964, Mr. Hennessy frequently gave Mike, a university student, permission to use the Jeep. Mike drove it on errands for his father, and for his personal pleasure, which included dates with Ruth Toben, whom Mike was "going with" at the time. It appears that Mike was required to seek Mr. Hennessy's permission for each use of the Jeep, but that there was otherwise a reasonably broad tolerance on the part of Mr. Hennessy as to the time and details of Mike's comings and goings in the vehicle. While Mike had, to his father's knowledge, and without "repercussions," permitted a few older close friends to drive the Jeep, there was a general understanding between them that the Jeep was not to be "loaned out" or driven by others. Ruth Toben was 15 years old in the summer of 1964 and did not have a driver's license. Although Mr. Hennessy had never expressly forbidden Mike to let Ruth Toben drive the Jeep, Mike clearly understood that no such permission would have been granted, and that asking for it would have been futile.

On the day of the accident, Mr. Hennessy granted Mike permission to use the Jeep. One purpose in Mike's using the car on that day was in connection with an errand for his father. Shortly after obtaining the Jeep, Mike picked up Ruth, at a friend's house. Ruth asked Mike if she could drive the Jeep. Mike yielded to the request, remaining in the vehicle as a passenger. The accident occurred shortly thereafter, in the City of Tucson, where the Hennessys and Ruth Toben resided.

The appellee, Fred Roberts, subsequently recovered a verdict of $30,000 against both Ruth Toben and Mike Hennessy for his injuries arising out of this accident. The verdict was partially satisfied to the extent of $10,000 by Mr. Hennessy's insurance carrier. Appellee then commenced the instant garnishment proceeding against the appellant, Civil Service Employees Insurance Company, which had issued a liability insurance policy to William H. Toben, Ruth Toben's father. Both parties agree that the important question before us is whether Ruth Toben is within the definition of "PERSONS INSURED" outlined by the following terms of the policy:

"PERSONS INSURED: The following are insureds under Part I:

\* \* \* \* \* \*

"(b) With respect to a non-owned automobile,

\* \* \* \* \* \*

"(2) any relative [who is a resident of the insured's household]
\* \* \*

"DEFINITIONS: Under Part I:

\* \* \* \* \* \*

" 'non-owned automobile' means an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile; *but does not include any automobile or trailer used without the permission of the owner;*
\* \* \*"

(Emphasis added)

Of importance also is the basic undertaking of the insurer:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of \* \* \* bodily injury \* \* \* arising out of the \* \* \* use of \* \* \* any non-owned automobile \* \* \*"

Ruth Toben was concededly a "relative" under the above provisions. After a hearing at which the facts which have been recited were adduced, the trial judge held that, although Mr. Hennessy held title, Mike Hennessy " \* \* \* was an 'owner' of the jeep as that term is used in the

Toben policy * * *," and that, accordingly, "Ruth Toben was operating the jeep with the permission of the owner." Rejecting further contentions by appellant that it did not receive timely notice of the claim asserted against Ruth under the policy and that the Tobens breached a cooperation clause in the policy, the trial judge held the appellant insurer liable for the remaining balance due on appellee's judgment.

■ In reaching the conclusion that Mike Hennessy was an "owner" of the Jeep within the italicized clause of the policy quoted above, the trial judge indicated in a brief memorandum opinion that he placed reliance upon the federal district court decision in Phillips v. Government Employees Ins. Co., 258 F.Supp. 114 (E.D.Tenn.1966). The *Phillips* case concerned a clause analogous to the one before us, except that it required that " * * * the actual use * * *" of a non-owned automobile be "* * * with the permission of the owner." The district judge in *Phillips* noted that the term "owner" is a general term having a variety of meanings and that in some contexts, "owner" and "possessor" were synonymous. Citing the familiar rule that ambiguities in insurance contracts will be resolved in favor of coverage, the district judge held that a minor in possession of an automobile to which his father held title was an "owner" capable of granting permission for its use to another who thereby became an insured under the "drive other cars" coverage of *his* (the other's) father's policy.

Subsequent to the entry of judgment in this case, the Court of Appeals reversed the district court's decision in the *Phillips* case. Phillips v. Government Employees Ins. Co., 395 F.2d 166 (6th Cir. 1968). The Court of Appeals found nothing in either the facts of the case or the language of the policy in question to provide

. " * * * a context for infecting the word 'owner' with an ambiguity permitting its expansion to include one who

was not the owner, but merely the son of the owner."

395 F.2d at 168.

■ We find ourselves in agreement with the appellate disposition in *Phillips*. Mere permissive possession does not amount to ownership. Construed as applied to an automobile and in the " * * * plain, ordinary and accepted sense in the common speech of man * * *," Teixeira v. Globe Indemnity Co., 349 F.2d 502, 505 (9th Cir. 1965), we think that the word "owner" is usually and generally intended to refer to someone having proprietary interest beyond that of a mere bailee. In some contexts, it refers to holder of legal title. The term is so defined in Tit. 28 of our Revised Statutes, relating to motor vehicles. A.R.S. § 28–130. We see no room for enlarging its meaning to include the bailee in this case. Compare *Teixeira, supra*, and authorities cited therein.

The only other two reported cases which we are aware of involving a similar factual and legal question reached the same result as the Court of Appeals in the *Phillips* case. In Helmkamp v. American Family Mutual Ins. Co., 407 S.W.2d 559 (Mo. App.1966), Robert Bremer, the minor son of Oscar Bremer, was permitted to drive his father's automobile to a church social gathering. Robert had his father's permission to take a girl friend home in the car. After he arrived at the gathering, Patricia Helmkamp asked Robert if she could drive the car around the block. Robert acceded to the request, Patricia had an accident, and one of the issues in the case was whether the "drive other cars" coverage of a policy issued to Patricia Helmkamp's father extended to Patricia. The coverage did not apply to " * * * any automobile * * * used without the express or implied permission of the owner." 407 S.W. 2d at 562. Noting that Oscar Bremer had no reason to believe that Patricia or anyone else would ever drive the car when it was entrusted to Robert, the appellate court, speaking specifically about the omnibus coverage of another policy but later stating that its remarks applied equally

well to the "drive other cars" coverage, held that Patricia Helmkamp did not meet her burden of showing

> " * * * that Oscar Bremer either through his words, conduct, or the nature and scope of the permission granted by him to Robert, indicated Robert, in turn, would be clothed with authority to pass on Oscar Bremer's permission to Patricia."

407 S.W.2d at 571.

While in both *Phillips* and *Helmkamp* the original permittee did not accompany the person to whom use of the car was entrusted, the converse was true in Jones v. Indiana Lumbermen's Mutual Ins. Co., 161 So.2d 445 (La.App.1964), writ refused, 245 La. 1077, 162 So.2d 572 (1964). In *Jones*, Leo Tervalon gave his minor stepson, Willis Rudolph, permission to use his car. After visiting his girl friend, the stepson picked up a friend, and they visited a bar. Afterward, the friend asked for, and was granted, permission to drive the car, in the company of the stepson, and an accident occurred. A policy issued to the friend's mother provided "drive other cars" coverage, provided the " * * * actual use * * *" of a non-owned automobile " * * * is with the permission of the owner * * *" Noting that Leo Tervalon had forbidden his stepson to allow others to drive, the court stated that it could not find any fact or circumstance from which the owner's consent to the friend's operation of the car might be implied. The court also stated:

> "We cannot agree that the mere presence of Rudolph in the car was the equivalent of consent by the owner."

161 So.2d at 447.

In an effort to show that Ruth Toben had the implied permission of Mr. Hennessy to drive the Jeep, appellee cites a number of cases construing the "omnibus clause" of an automobile liability policy, including State Farm Mutual Automobile Ins. Co. v. Williamson, 331 F.2d 517 (9th Cir. 1964) (applying Arizona law), in which a son's fiancee was held to have implicit permission to drive his parents' automobile even though they had expressly, but ineffectually, forbidden him to allow her to drive it. While the omnibus clause is somewhat analogous to the coverage we are considering here, we believe the two coverages naturally fall in diffferent categories. That the legislature so regards them is indicated by the fact that the omnibus clause is required by our Safety Responsibility Act, A.R.S. § 28–1170, subsec. B, par. 2, and *see* Univeral Under. Ins. Co. v. Dairyland Mut. Ins. Co., 102 Ariz. 518, 433 P.2d 966 (1967), while the "drive other cars" coverage is not mentioned. Thus, while some omnibus clause cases are instructive,[2] we do not consider them controlling. Nor do we think that the "drive other cars" coverage converts what is obviously by its terms an "owner's" policy of automobile liability insurance into an "operator's" policy [3] so as to subject it to the requirements of an operator's policy as set forth in A.R.S. § 28–1170, subsec. C.

▮ We see no room under the facts adduced in this case for a finding that the use being made here was with the implied permission of Mr. Hennessy. Certainly such a finding could not lightly be made in view of the fact that Ruth Toben was not a licensed driver. There is no suggestion in the record whatever that Mr. Hennessy had any idea that Ruth Toben had or would drive his car. All of the implications are to the contrary, and Mike explicitly stated that he knew that his father would not have permitted her to drive. In our view the particular risk resulting in this accident was one not within the contempla-

---

2. Cases considering omnibus insurance coverage where the owner's or insured's original permittee has allowed a second or sub-permittee to drive are collected in an annotation commencing at 4 A.L.R.3d 10.

3. The distinction between these two types of policies is set forth in A.R.S. § 28–1170, and is discussed in Reserve Ins. Co. v. Staats, 9 Ariz.App. 410, 453 P.2d 239 1969), and Connolly v. Great Basin Ins. Co., 6 Ariz.App. 280, 287–288, 431 P.2d 921, 928–929 (1967).

tion of the parties to this contract and is fairly within this exclusionary clause.

We are not persuaded by the historical argument indulged in by the trial court's opinion in *Phillips* (258 F.Supp. at 116), and other cases[4] that, because this clause may have been placed in such policies to avoid liability when an insured steals a car,[5] it should be restricted to this situation. The answer to this argument is that the plain intendment of this exclusionary clause takes in more than thefts. The language should be given a fair construction, absent some compelling public policy.

No decision dealing with "driving other cars" coverage has been called to our attention in which a similar exclusionary clause has been held to be ineffective when the use was so clearly beyond the permission granted. We find Keen v. Clarkson, 56 Ariz. 437, 108 P.2d 573 (1940), distinguishable, in view of the fact that the permittee's fiancee, to whom operation of a truck was turned over when the permittee became tired, was a driver of eleven years experience and had herself previously driven one of the owner's personal cars to the owner's knowledge. In Employers Mutual Casualty Co. v. Hart, 422 P.2d 422 (Okl. 1967), there was direct testimony by the owner of permission and the appellate decision holds that the trial court could discount an impeaching deposition.

For reasons not apparent on the record, appellee filed a cross-appeal " * * * from the Findings of Fact and Conclusions of Law * * * and from the final judgment * * *" in his favor. No reference to the cross-appeal was made in appellee's brief in this court or in oral argument, and he seeks nothing in this court except affirmance of the judgment. The cross-appeal is therefore deemed abandoned.

Reversed.

HATHAWAY and KRUCKER, JJ., concur.

4. *See, e. g.*, McMichael v. American Ins. Co., 351 F.2d 665, 668 (8th Cir. 1965).

5. *See* Sperling v. Great American Indemnity Co., 7 N.Y.2d 442, 199 N.Y.S.2d 465, 166 N.E.2d 482 (1960) ; Bowman v. Preferred Risk Mutual Ins. Co., 348 Mich. 531, 83 N.W.2d 434 (1957) ; State Farm Mutual Automobile Ins. Co. v. Walker, 334 S.W.2d 458 (Tex.Civ.App.1960) ; Home Indemnity Co. v. Ware, 183 F. Supp. 367 (Del.1960).