118 N.J. Super. 84 (1972)
286 A.2d 517
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
ZURICH AMERICAN INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND DESKIN T. KNOLL AND DOROTHY N. KNOLL, DEFENDANTS-APPELLANTS, AND STEVEN JOHNS AND JOSEPH W. JOHNS, DEFENDANTS-APPELLANTS, AND A. RODMAN KAY, A MINOR, BY HIS FATHER AND GUARDIAN AD LITEM, ALBERT KAY AND ALBERT KAY, INDIVIDUALLY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1971.
Decided January 21, 1972.
*87 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Joseph H. Kenney argued the cause for defendants-appellants Steven Johns and Joseph W. Johns (Messrs. Archer, Greiner, Hunter & Read, attorneys; Mr. Charles Lee Harp, Jr., on the brief).
Mr. Edgar E. Moss, II, argued the cause for plaintiff-respondent State Farm Mutual Automobile Insurance Company *88 (Messrs. Moss & Powell, attorneys; Mr. William R. Powers, Jr., on the brief)
Mr. Raymond W. Uliase argued the cause for defendants-appellants Deskin T. Knoll and Dorothy N. Knoll and A. Rodman Kay, a minor, and Albert Kay (Messrs. Uliase & Uliase, attorneys for defendants Knoll, and Messrs. Toll Friedman & Pinsky, attorneys for defendants Kay).
Mr. Michael Patrick King argued the cause for defendant-respondent Zurich American Insurance Company (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
Messrs. Casby & Garrigle filed a statement in lieu of brief on behalf of the New Jersey Unsatsified Claim and Judgment Fund Board.
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff State Farm Mutual Automobile Insurance Company (State Farm) instituted suit for a declaratory judgment that it did not cover defendant Steven Johns as an additional insured in connection with an accident which occurred on March 16, 1969 when an automobile owned by its insured, Thomas Busby, III, and driven by Steven, was in a collision with one being operated by defendant Deskin T. Knoll. Defendant Zurich American Insurance Company (Zurich) counterclaimed and cross-claimed seeking an adjudication that a policy of insurance issued by it to Joseph W. Johns (Steven's father) did not cover the accident in question. Defendants Deskin T. Knoll and Dorothy N. Knoll, Steven Johns and Joseph W. Johns, A. Rodman Kay, a minor, and Albert Kay appeal from a judgment holding that neither the State Farm nor the Zurich policy covered the accident.
The present action arose out of the operation by Steven of a 1956 Thunderbird (a classic) owned by Busby. The essential *89 facts are not in dispute and, as found by the trial court, are as follows:
The sequence of events leading up to the collision began on the morning of March 16, 1969 when Johns arrived at the home of Thomas Busby. Johns and Busby were at the time fairly close friends. They attended the same school, had at least one class together, were members of the same football team and visited each other frequently. On the morning in question, they were working together on a 1956 Ford Thunderbird owned by Busby and registered in his name.
At the trial, Busby testified that sometime during the time they were working on the car, Johns got into the car and backed down some 20 yards of the driveway. Apparently, Busby said nothing to Johns at the time about the use of the car, but merely stood mute while this event occurred. Interestingly enough, Johns had no recollection at all of the event.
Busby stated that he had never specifically given Johns permission to operate the car. Johns' testimony was to the same effect. Busby added that he would never have given Johns permission to operate the car. Johns' testimony was to the same effect. Busby added that he would have never given Johns permission to operate the vehicle on public streets because he knew that Johns had no license. The driveway where Johns had operated the vehicle that day was more or less a farm road some one-quarter of a mile long.
Sometime after one o'clock that afternoon, Busby and Johns left the Busby property in the Busby car. Busby was driving Johns home. They decided to stop at a Seven-Eleven grocery store along the way to get a soda.
Sometime before they reached the Seven-Eleven, they passed a car driven by one Rodman Kay which was traveling in the opposite direction. Kay in his deposition stated that he recognized Johns and Busby and turned around and followed them into the Seven-Eleven parking lot. He stated that he knew both of them from school. Johns testified that Kay was a friend of his only and did not know Busby. Both cars pulled into the parking lot and parked towards the right-hand side away from the normal parking area directly in front of the store.
Kay owned a 1968 Pontiac Firebird. Busby asked Kay for permission to take the car for a ride. Kay agreed. They did not discuss how long Busby could use the car or how far he should drive. Busby pulled away in the Firebird and left the keys to the Thunderbird in the ignition.
Kay's deposition and Johns testimony conflict as to which one of them went into the Seven-Eleven and got a soda. One of them did. Eventually, they sat down in Busby's car  Johns behind the steering wheel and Kay on the passenger side. Without discussion between the two about whether or not either of them had permission to use *90 the car, Johns started the car and drove out of the parking lot. Johns testified that at the time he believed that Busby would have no objection to him using the car.
The road taken by Busby was circular. It started at the Seven-Eleven, went through a development and eventually wound up at the store. Johns took the same route except that he started in the opposite direction. He stated that he planned to meet somewhere in the middle of the circle. Before he had a chance to meet Busby he collided with a car driven by one Deskin T. Knoll.
In the meantime, Busby returned to the Seven-Eleven and noticed his car was missing. He did nothing other than wait until he was informed that the car was involved in an accident.
At the time of the accident Busby, the owner of the car, was the named insured under a policy issued by State Farm. The policy recited that, with respect to an owned automobile, the word "insured" included:
(4) Any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission * * *. (Emphasis added.)
At the same time Joseph W. Johns, the father of Steven, was the named insured under a policy issued by Zurich under which, with respect to a nonowned automobile, there was included as an insured:
(2) Any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission * * *. [Emphasis added]
Mr. Johns and Steven contended that Steven was an insured under the omnibus clause of the policy issued by Zurich because his operation of Busby's vehicle was "reasonably believed" by Steven to be with Busby's permission. They also urged that Steven was an omnibus insured under State Farm's policy because at the time of the accident his operation was with Busby's implied permission. This contention *91 was joined in by the Knolls and Kays. The trial court equated the clause "reasonably believed to be with the permission, of the owner" contained in the Zurich policy with that affording coverage where the operation was with the "implied consent" of the insured, as contained in the State Farm policy. It found that the operation of the Busby vehicle by Steven was without the consent, express or implied, of Busby and concluded that Steven was not covered under either policy.

I

The State Farm Policy
While the State Farm policy restricts coverage to one operating with "permission," N.J.S.A. 39:6-46(a) requires that automobile liability policies shall "insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured, against loss from the liability imposed upon the insured or other person by law * * *." (Emphasis added.) It follows that liability under the policy would attach regardless of whether the consent to the use of the vehicle was express or implied, Selected Risks Insurance Co. v. Zullo, 48 N.J. 362, 373 (1966), and regardless of whether the permittee went beyond the scope of the original permission he received to use the vehicle, Odolecki v. Hartford Accident & Indemnity Co., 55 N.J. 542, 550 (1970); Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488, 496-497 (1960).
Permission to operate a vehicle may be implied by usage or the common practice of parties. Penza v. Century Indemnity Co., 119 N.J.L. 446, 449 (E. & A. 1937). It may be implied from a course of conduct in which the parties have mutually acquiesced. Standard Accident Insurance Company v. Gore, 99 N.H. 277, 109 A.2d 566 (Sup. Ct. 1954); Snyder v. Carlson, 135 Pa. Super. 390, 5 A.2d 588, 589 (Super. Ct. 1939); Tomasetti v. Maryland Cas. Co., 117 Conn. 505, *92 169 A. 54 (Sup. Ct. Err. 1933). It is more readily implied where the owner and the operator are relatives or close friends. Toney v. Henney, 166 F. Supp. 85, 90 (N.D. Ohio 1958); Lumbermens Mutual Casualty Co. v. Poths, 104 Ill. App.2d 80, 243 N.E.2d 40, 46 (App. Ct. 1968). The existence of implied permission does not depend upon affirmative acts alone but may be inferred where there is a mutual acquiescence or a lack of objection under the circumstances. Lumbermens Mutual Casualty Co. v. Poths, supra, 243 N.E.2d at 46. Where the parties are relatives or friends, the fact that the keys to the car have been entrusted to the operator or left in a place easily accessible to him has been held to be a significant factor in determining whether there was implied permission to use the car. Casey v. Fortune, 78 Cal. App.2d 922, 179 P.2d 99 (D. Ct. App. 1947); Lumbermens Mutual Casualty Co. v. Poths, supra. The fact that the driver had no license would not necessarily preclude a finding of implied permission.
The issue of whether there was implied permission to operate the Busby car was for the trial court. Its factual findings are adequately supported by the proofs. State v. Johnson, 42 N.J. 146, 161-162 (1964).
Here there was no previous course of conduct between Busby and Steven from which permission could be implied. He had never operated the car prior to the day in question. While he had moved the car a short distance in the Busby driveway that morning, even then he had not been given permission to do so but relied on Busby's silence. Busby testified, without contradiction, that he had never previously permitted anyone to drive his car. Neither Steven nor young Kay were in the Thunderbird when Busby left it with the key in the ignition to take a ride in Kay's car. The trial court correctly determined that a case of implied permission had not been made out. Cf. Fireman's Fund Insurance Co. v. Brandt, 217 F. Supp. 893 (D.N.H. 1962); Main v. Cameron, 13 Wis.2d 15, 108 N.W.2d 142 (Sup. Ct. 1961).

*93 II

The Zurich Policy
As noted above, the Zurich policy covered Steven as a relative of his father if his actual operation of the nonowned vehicle (here the Busby car) was with the permission or reasonably believed to be with the permission of the owner. What we have already said with regard to State Farm's coverage applies with equal force to the contention that Steven was operating with Busby's implied permission within the provisions of the Zurich policy.
However, it is contended that the trial court misconstrued the meaning of the additional clause "reasonably believed to be with the permission of the owner" in the Zurich policy, and that its ruling that it should "probably" be accorded the same effect as the clause providing for coverage where operation was with the owner's implied permission was error. It is urged, in effect, that even in the absence of implied permission Steven was entitled to coverage under this clause.
The clause in question appears to be comparatively new in the industry and applies only to coverage for nonowned automobiles. No party to this appeal has cited a case in which it has been directly construed and we have found none.[1] It is argued that the court should have held that there was coverage if it found that Steven believed he had Busby's consent to drive the Thunderbird, and this belief was reasonable on his part. Zurich urges that the clause should be interpreted to mean what a reasonable man would have concluded under all of the facts and circumstances.
The rule is well settled that if the controlling language of a policy would support two meanings, one favorable to the insured and the other favorable to the insurer, the interpretation sustaining coverage will be applied. Butler v. Bonner & Barnewall, Inc., 56 N.J. 567, 576 (1970); *94 Chicago Ins. Co. v. Security Ins. Co. of Hartford, 111 N.J. Super. 291, 294-295 (App. Div. 1970). Where the policy provision is one of inclusion a broad and liberal view is to be taken of coverage. Mazzilli v. Acc. & Cas. Co. of Winterthur, 35 N.J. 1, 8 (1961). In construing the words "reasonably believed" courts are not to lose sight of the public policy reflected by State Farm Mut. Auto. Ins. Co. v. Travelers Ins. Co., 57 N.J. 174, 178-180 (1970); Odolecki v. Hartford Accident & Indemnity Co., supra, 55 N.J. at 546; Selected Risks Insurance Co. v. Zullo, supra, 48 N.J. at 368.
We construe the clause in question as constituting the operator of a nonowned automobile an insured under the terms of his policy where he believes that his operation thereof is with the permission of the owner and such belief on his part is found to be reasonable. At first glance, in view of the construction which has been placed upon omnibus clauses by our own courts, this may appear to be a distinction without a difference. However, in certain states which do not adhere to our rule regarding "initial permission" the clause would play a significant part in determining the extent of coverage.
The facts in Carlsson v. Pennsylvania General Insurance Co., 214 Pa. Super. 479, 257 A.2d 861 (Super. Ct. 1969), aff'd 438 Pa. 553, 265 A.2d 520 (Sup. Ct. 1970), strongly resemble those before us. There the driver had been permitted by the son of the owner to operate the father's car while it was in Meadville, Pennsylvania, notwithstanding that the son had been forbidden to take the car to Meadville in the first place. At that time the driver was a member of the household of his own father, who was covered by a policy issued by Pennsylvania General Insurance Co. The policy contained a provision, with respect to nonowned automobiles, that any relative driving a passenger automobile was covered, provided the actual use thereof was with the permission of the owner. In holding that his father's policy covered Carlsson the court held:
*95 We find, therefore that the insurance company in referring to the consent of the "owner" in non-owned automobile coverage included therein the consent of the possessor of the automobile, so long as the borrower reasonably believes that the possessor is the owner or has the permission of the owner to lend the automobile to third persons.
This is not to say that a person may rely on his own insurance when he knowingly borrows an automobile without the permission of the owner. In such circumstances the driver should receive no greater coverage than would a thief. When, however, an individual has borrowed an automobile in the reasonable belief that he has the consent of the actual owner, he should be fully covered by his own policy. [at 866 emphasis added]
In an accompanying footnote the court pointed out that insurers now regularly provide coverage "provided it is with the permission or reasonably believed to be with the permission of the owner."
We are satisfied, however, that Steven suffered no prejudice by reason of the trial court's equating of the clause in question with implied permission. Here his only dealings were with the admitted owner of the vehicle. He could have had no ground reasonably to believe that he had permission to operate the car on the highway. Cf. Truelove v. Nationwide Mutual Ins. Co., 5 N.C. App. 272, 168 S.E.2d 59, 61 (Ct. App. 1969). He had never previously driven it on the highway and had neither requested nor obtained permission to do so. He knew that he was under age and had neither a license nor a permit to drive. Such operation of a motor vehicle by him would have amounted to a violation of law by both Busby and himself. N.J.S.A. 39:3-10, 29 and 39.
The judgment of the Law Division is accordingly affirmed. No costs.
NOTES
[1] While the cited clause appeared in the policy involved in Selected Risks Insurance Co. v. Zullo, supra, the court there was not called upon to interpret it.