[Civ. No. 22494. Fourth Dist., Div. One. May 15, 1981.]

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
Plaintiff and Respondent, v.
KARLA DAWN KINYON, a Minor, etc., Defendant and Appellant.

214

**COUNSEL**

Thomas E. McDougall for Defendant and Appellant.

Post, Kirby, Wideman & Noonan, David J. Noonan, and John C. Wynne for Plaintiff and Respondent.

**OPINION**

**STANIFORTH, J.**—Mark S. Bunn is a defendant in the underlying negligence action brought by Karla Dawn Kinyon to recover for personal injuries sustained by her in an automobile accident. At the time of the accident, Mark was driving and Karla was a passenger in a "non-owned automobile," a pickup truck belonging to Steven and Magda Perdiak.

This action for declaratory relief was brought by the Government Employees Insurance Company (GEICO) against the Bunns and Kinyon, seeking to determine the respective rights and duties of GEICO

and its named insured, Charles E. Bunn (the father of Mark S. Bunn), under its "Family Automobile Policy." More particularly the issue tendered concerns GEICO's duty to provide a defense[1] and indemnification in Kinyon's suit against Mark Bunn by virtue of the omnibus clause. The "nonowned automobile" clause of the policy provides coverage: "(b) with respect to a non-owned automobile,

"(1) the named insured,

"(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and

"(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above.

After a nonjury trial, the court determined the pickup truck to be a passenger automobile but conformable to GEICO's contentions found Mark Bunn did not have express or implied permission from the owners (Perdiaks) or the Perdiak grandson, John Mandoki,—a permittee—to drive the Dodge pickup; nor did Mark have a reasonable belief that he had permission from the owners to drive the vehicle. Based upon these factual findings, the court concluded GEICO had no obligation under its policy to defend or indemnify either the father, Charles E. Bunn, or the son, Mark, from any damage or loss sustained as a result of the underlying Kinyon damage suit. Kinyon appeals the judgment.

FACTS

In the late evening hours of March 14, 1977, nonlicensed 15-year-old Mark Bunn was involved in an accident while driving a Dodge pickup truck owned by Steven and Magda Perdiak. Karla Kinyon, Julie Mandoki and Janell Crehan were passengers in the pickup truck. Karla sustained personal injuries for which she filed the underlying action against the Bunns.

---

[1]GEICO has already tendered the defense to Mark Bunn in the underlying action under a reservation of right to deny indemnification duties.

Mark obtained possession of, was driving the vehicle in the following circumstance. Passenger Julie Mandoki and her brother John are grandchildren of the Perdiaks and were residing in the Perdiak home in Oceanside at the time of the accident. Mark was a friend of both Julie and John. John was a licensed driver and Steven Perdiak allowed him to drive the pickup on occasions. Julie was not licensed to drive and was not permitted by her grandparents to do so. Steven Perdiak told John on several occasions he was not to allow anyone else to drive the pickup. The "rule of the house" was that John could not drive the pickup after the grandparents left in the evening for work. John had, to Mark's knowledge, allowed two other individuals to drive the pickup contrary to the grandparents' direction. Mark knew Steven Perdiak owned the pickup truck and did not want him driving it.

On the night of the accident, Mark was at the Perdiak house after the Perdiaks had departed for work. He received the keys to the pickup from Julie in this disputed fact context.

Julie testified (by way of deposition) she knew the grandfather did not let anyone else besides John drive the truck and John was prohibited from driving the truck "after dark"—after the Perdiaks had gone to work. On the evening in question, John was asleep upstairs. Julie asked Mark if he knew how to drive the truck. He said yes; whereupon Julie went upstairs and said to John "Give me the keys to the truck, and we'll go pick up Chris" (John's girl friend). John said "Okay" and "he [John] told me where the keys were and I got them. But I had his permission" and then "I showed him [the key] and told him that Mark was going to drive." John said "Just bring Chris back to me" *after* being told Mark was to drive.

Mark testified Julie came downstairs and tossed the keys in his lap and said "Come on let's go." Mark then asked Julie "Is it all right? Is it okay if we take the truck?" She said "Yeah. Sure." Mark testified to his own knowledge of persons (minors) other than John who had driven the truck with John's permission but he admits that "[Mr. Perdiak] wouldn't let [him] drive the truck" but he "didn't know John wouldn't let [him] drive the truck.

John's testimony obliquely contradicts his sister's (Julie) testimony concerning his giving the key to her after being told Mark would drive. John states he was asleep—knew nothing about a trip to pick up Chris

and bring her to him. He learned of the whole affair when awakened by the police at 3 a.m. with news of the accident. Karla Kinyon's testimony depicts an awake John giving the key (and gas key) to Julie. While the circumstances surrounding Mark's obtaining the key are sharply in conflict, yet the conceded fact stands: Mark drove the pickup without the permission of the known "owner," Steven Perdiak, that evening.

DISCUSSION

I

The explicit language of the GEICO-Bunn policy—"nonowned" automobile clause—grants coverage in (b)(2) to "any relative" provided his actual operation or use of the nonowned vehicle (the Perdiak pickup truck) was "with the permission, or reasonably believed to be with the permission of the owner . . . ."

 It is Kinyon's position that when Steven Perdiak gave permittee John authority to drive the vehicle, then permission could be given by the permittee to a subpermittee (Mark) even though the owner had directed John not to allow another to drive the vehicle, citing *Peterson* v. *Grieger, Inc.* (1961) 57 Cal.2d 43 [17 Cal.Rptr. 828, 367 P.2d 420]. The Supreme Court there stated that "for purposes of [former Veh. Code] section 402 liability [now § 17150], 'if the owner entrusts his car to another, he invests him with the same authority to select an operator which the owner has in the first instance.' [Citations.]" (*Id.* at p. 54.)

If we assume the authority is in point, yet factually this court is foreclosed from applying such principles. The trial court expressly found, based upon sharply conflicting evidence, that "John Mandoki did not give permission to either Julie Mandoki or MARK S. BUNN to drive the . . . vehicle . . . ."

That finding of the trial court is supported by substantial evidence albeit conflicting. This court is bound by the established rule of appellate review "all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citations]." (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) The power of this court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the findings and the judgment.

(*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.* (1967) 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)

## II

The findings of absence of actual or implied permission obtained from either John or his grandfather is but prologue to the problem presented by this further language granting coverage where use of a nonowned vehicle is *"reasonably believed [by such relative] to be with the permission, of the owner and is within the scope of such permission. . . ."*

No California authority has been cited[2] interpreting this precise language.

One California authority observed in passing that beginning in the 1963 Family Automobile Liability Policy the requirement of "permission" from the owner of the nonowned vehicle was relaxed by extending coverage if the relative (as distinguished from the named insured) "reasonably believed" the use "to be with the permission of the owner." (*Anderson* v. *State Farm Mut. Auto. Ins. Co.* (1969) 270 Cal.App.2d 346, 350 [75 Cal.Rptr. 739].) The proviso, however, has been examined, interpreted in depth by several courts of sister jurisdictions. The more persuasive, weight of authority views are as follows:

If the policy language grants coverage where the insured "reasonably believed" he has permission to use the nonowned vehicle, the scope of the coverage has been held to be significantly broader than a policy which is limited by its terms to actual (or implied) permission. (*State Farm Mut. Auto. Ins. Co.* v. *Zurich Amer. Ins. Co.* (1972) 118 N.J. Super. 84 [286 A.2d 517], aff. in part 62 N. J. 155 [299 A.2d 704]; *Western States Mutual Insur. Co.* v. *Verucchi* (1976) 38 Ill.App.3d 266 [347 N.E.2d 63, 67]; *Maryland Casualty Co.* v. *Iowa National Mut. Ins. Co.* (1973) 54 Ill.2d 333 [297 N.E.2d 163]; *American Motorists Insurance Co.* v. *LaCourse* (Me. 1974) 314 A.2d 813; *Carlsson* v.

---

[2]The cases cited by both Kinyon and GEICO, while helpful on the issue of "permission," are not directly in point since permission was not found as a fact and the cases involved questions of imposition of liability on the owner of the vehicle based on the "owned automobile" provision of the omnibus clause, not the "nonowned automobile" clause here involved. (*Peterson* v. *Grieger, Inc., supra*, 57 Cal.2d 43, *Souza* v. *Corti* (1943) 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861]; *Norris* v. *Pacific Indemnity Co.* (1952) 39 Cal.2d 420 [247 P.2d 1].)

*Pennsylvania General Insurance Co.* (1969) 214 Pa.Super. 479 [257 A.2d 861, 866], affd. 438 Pa. 553 [265 A.2d 520]; *Selected Risks Ins. Co.* v. *Zullo* (1966) 48 N.J. 362 [225 A.2d 570]; *Farmers Insurance Co. of Washington* v. *USF&G Co.* (1975) 13 Wn.App. 836 [537 P.2d 839, 842], and authorities cited; *Employers Commercial Union Ins. Co.* v. *Bertrand* (La.App. 1975) 306 So.2d 426, 429-430; *United States Fidelity & G. Co.* v. *Safeco Ins. Co. of Am.* (Mo. 1975) 522 S.W.2d 809, 817; *Nationwide Mutual Insurance Company* v. *Vaughn* (W.D.Va. 1969) 307 F.Supp. 805, 807, affd 427 F.2d 714 (4th Cir. 1970); cf. *Truelove* v. *Nationwide Mutual Insurance Company* (1969) 5 N.C. App. 272 [168 S.E.2d 59]; see also 7 Am.Jur.2d, Automobile Insurance, § 240, p. 799.)

The New Jersey highest court after a thorough analysis concluded that the insurer intended a more liberal effect, favorable to coverage, by the "reasonably believed" phrase. (*State Farm Mut. Auto. Ins. Co.* v. *Zurich Amer. Ins. Co.* (1973) 62 N.J. 155 [299 A.2d 704].)

The New Jersey Court reasoned (p. 711): "In the first place, the draftsmen of the Zurich nonowned vehicle clause obviously intended a broader coverage for the 'reasonably believed' language when they wrote: 'provided his actual operation . . . is with the permission, *or* reasonably believed to be with the permission, of the owner . . . '. (Emphasis added.) If all that was contemplated was simple permission, express or implied, as conventionally understood, the disjunctive clause is meaningless surplusage. There is also the obvious contrast with the standard omnibus insured language as to the owned automobile contained in the Zurich policy (not heretofore quoted).

In view of Kinyon's alternative factual assertion that Mark "reasonably believed" in light of all the circumstances that he had permission from the permittee of the owner, we need examine a further body of relevant, persuasive authorities.

The policy provisions here do not expressly state that the permission may be obtained from one lawfully in possession—a permittee such as John. Nor does the policy in question define "owner." It is a word of broad meaning. It may be synonymous with "holder" or possessor of a chattel." (73 C.J.S (1975) Property § 13a and § 13c; accord *Allstate Ins. Co.* v. *Chinn* (1969) 271 Cal.App.2d 274, 278 [76 Cal.Rptr. 264]; *Stoddart* v. *Pierce* (1959) 53 Cal.2d 105, 115 [346 P.2d 774]; *American Indemnity Company* v. *Davis* (5th Cir. 1958) 260 F.2d 440; *Powell*

v. *Home Indemnity Company* (8th Cir. 1965) 343 F.2d 856; *Phillips* v. *Government Employees Insurance Company* (E. E.D.Tenn. (1966) 258 F.Supp. 114; see also *Realty Trust Co.* v. *Craddock* (1938) 131 Tex. 88 [112 S.W.2d 440]; *Carlsson* v. *Pennsylvania General Insurance, supra,* 257 A.2d 861, 864; *Western States Mutual Insur. Co.* v. *Verucchi, supra,* 347 N.E.2d 63, 66, and cases cited; *Farmers Insurance Co. of Washington* v. *USF&G Co., supra,* 537 P.2d 839, 843.)

■ According to Black's Law Dictionary (4th ed. 1951) page 1287, "The word [owner] is not infrequently used to describe one who has dominion or control over a thing, the title to which is in another. [Citation.]" We conclude the word "owner" is a nomen generalissimum. Its meaning is to be gathered from the context in which it is used and the subject matter to which it is applied. To such a word these rules of construction must be applied. "Owner" is to be interpreted in a manner in which it would be understood by the *average* man, and not in a technical sense; that an interpretation most favorable to the insured must be applied if the policy is fairly susceptible to two different interpretations, even though a different or technical meaning may have been intended by the insurer; and that insurance policies should be construed to maximize coverage in a fashion consonant with the fairness to the insurer.

Aside from the fact we find the term "owner" ambiguous, there are other practical considerations to be weighed in reaching a decision as to the meaning to be given. First, the insurer is not providing coverage for any risk not anticipated; we are not dealing with a stolen automobile. The Bunns paid premiums to GEICO to be protected against liability for injuries arising out of use of a nonowned automobile. Secondly, it would not be workable for the driver of a nonowned automobile to determine in all instances whether he had the express or implied permission of the title owner, legal or equitable, to drive the car. Although there is authority to the contrary,[3] we conclude the better rule, conformable to the foregoing considerations and most consonant with public policy of the State of California, is to be found in *Carlsson* v. *Pennsylvania General Insurance Co., supra,* 257 A.2d 861, and its

---

[3]*Phillips* v. *Government Employees Insurance Company* (6th Cir. 1968) 395 F.2d 166 (the term "owner" means title owner and is not ambiguous); *Civil Service Employees Insurance Co.* v. *Roberts* (1969) 10 Ariz.App. 512 [460 P.2d 48]; *Bright* v. *Ohio Casualty Insurance Company* (6th Cir. 1971) 444 F.2d 1341; *Jones* v. *Indiana Lumbermen's Mutual Insurance Co.* (La.App. 1964) 161 So.2d 445; cf. *State Farm Mutual Auto. Ins. Co.* v. *Mohan* (1967) 85 Ill.App.2d 10 [228 N.E.2d 283] (policy required permission of the owner or one in lawful possession); *State Automobile Mutual Insurance Co.* v. *Williams* (1973) 268 Md.535 [302 A.2d 627].)

progeny. In *Carlsson*, factually, the owner of the automobile had loaned it to his son with the express restriction that it be operated in the Pittsburgh area. In spite of this prohibition, the son took the car to another town and loaned it to a friend. The friend while driving the automobile was involved in an accident and sought to recover under *his father's* automobile policy. *Carlsson* concluded that the insurance company was liable and stated at page 866: "We find, therefore that the insurance company in referring to the consent of the 'owner' in non-owned automobile coverage included therein the consent of the possessor of the automobile, so long as the borrower reasonably believes that the possessor is the owner or has the permission of the owner to lend the automobile to third persons."[4]

In view of the rules of construction and our determination that the term "owner" is ambiguous as used in GEICO's policy, we find the term may include both the title owner, legal or equitable, as well as the possessor of the automobile so long as the one driving the auto reasonably believes he has the permission of the owner to drive the vehicle. To hold otherwise would necessitate inquiry concerning who was the owner each time the car of another was driven, absent knowledge to the contrary. One could never have the secure knowledge he was driving with permission of the owner. He would always be driving the car of another at his peril.

### III

█ We turn next to the task of defining the requirement of a "reasonable belief" that permission was granted the relative borrowing a nonowned vehicle.

When inquiring as to express or implied permission, the attention is on the inferrable state of mind of the alleged permit*er*. But the language, "reasonably believed to be with the permission" of the owner, focuses rather on the state of mind of the claimed permittee. Did he in fact believe, with reason, that the owner was thus willing; whether the

---

[4](Accord *State Farm. Mut. Auto. Ins. Co.* v. *Zurich Amer. Ins. Co., supra,* 286 A.2d 517, 526; *Farmers Insurance Co. of Washington* v. *USF&G Co., supra,* 537 P.2d 839, 843; *United States Fidelity & G. Co.* v. *Safeco Ins. Co. of Am., supra,* 522 S.W. 2d 809, 817, 818; *Western States Mutual Insur. Co.* v. *Verucchi, supra,* 347 N.E.2d 63, 65; *Maryland Casualty Co.* v. *Iowa National Mut. Ins. Co., supra,* 297 N.E.2d 163, 167; *Employers Commercial Union Ins. Co.* v. *Bertrand, supra* 306 So.2d 426, 429, 430; *Johnson* v. *Aetna Casualty and Surety Co.* (La.App. 1973) 274 So.2d 769; *Republic Ins. Co.* v. *Luna* (Tex. Civ. App. 1975) 539 S.W.2d 69,70.)

factfinder would conclude from the circumstances that the owner was actually willing is not legally significant. There is a second aspect of the difference. The reasonableness of the claimed permittee's belief that the owner is willing, under the GEICO clause, is not necessarily measured by the belief of the "reasonable man." "The test is, rather, the reaction of a reasonable boy of [Mark's] age, personality and social milieu, subject to such attendant influences on his judgment and mind as may be credibly discerned from the proofs." *State Farm. Mut. Auto. Ins Co.* v. *Zurich Amer. Ins. Co., supra*, 299 A.2d 704, 712; see also *Western States Mutual Insur. Co.* v. *Verucchi, supra*, 347 N.E.2d 63, 67; *American Motorists Insurance Co.* v. *LaCourse, supra*, 314 A.2d 813, 817-818; *Johnson* v. *Aetna Casualty and Surety Co., supra*, 274 So.2d 769, 773.

We conclude "reasonable belief" imports a subjective standard for determining permission, so that a subpermittee could be covered if he reasonably believed that he had permission of the owner, transmitted through another permittee, whether or not such other permittee had actual authority to transmit permission. (*State Farm. Mut. Auto Ins. Co.* v. *Zurich Amer. Ins. Co., supra*, 286 A.2d 517, 527; and cases cited in fn. 4, *ante.*)

In light of the foregoing rules, we must examine the circumstances surrounding Mark's decision to drive the Perdiak pickup. The uncontradicted facts—when we focus on Mark's subjective state of mind—warrant the conclusion that Mark did not engage in an act of theft. It may be concluded he reasonably believed, based upon the totality of his knowledge of John's willingness, despite prohibition by his grandfather, to allow others to drive the truck, plus the statement made to him by Julie when the keys to the auto were tossed in his lap, that he had permission from John. But these further facts were known to Mark. Mark knew John was not in fact the owner and that his permission to drive was limited. Mark knew the truck was owned by another—the grandfather. Mark had been told he (Mark) was not permitted to drive the truck. These facts point unmistakably to no coverage of Mark. While Mark may be said to have had a reasonable belief that *John* gave permission yet Mark *could not reasonably believe this was the consent of the owner* transmitted through a known permittee. He knew who the owner was. He knew no consent was obtained from that source. The trial court's challenged finding on this issue is warranted and sustained

both by substantial evidence and applicable law. (See *American Home Assurance Company* v. *Czarniercki* (1970) 255 La. 251 [230 So.2d 253, 257].)

## IV

The wording of the (b)(2) proviso—the nonowned automobile clause —is substantially the same as the (a)(2) proviso—the owned automobile coverage. Most significant though is the lack of the "permission" requirement for use of a nonowned automobile as to the *named insured*.

This fact of unconditional coverage as to the named insured must be viewed in the light of GEICO's broad agreement to indemnify and defend contained in coverage A and coverage B which provide: "Coverage A—Bodily Injury Liability;

"Coverage B—Property Damage Liability:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. Bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;

"B. Injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage'; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient."

We find most significantly under part I of the policy relating to liability "Coverage A—Bodily Injury Liability" and "Coverage B— Property Damage Liability," the insurer agrees "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [bodily injury and property damage] arising out of the ownership, maintenance or use of the owned automobile *or any nonowned automobile, . . .*" Such provision appears to be all inclusive and designed to protect the named insured against all claims for

damages arising out of the operation of any owned or nonowned automobile. Nothing relating to permission is stated.

Furthermore, if coverage granted the named insured is to be restricted, we would expect to find the restriction in the exclusion clause. We find nothing in the exclusion clause of the present policy which contains any exclusion pertinent here. In fact, the narrow explicit exclusion (h), which reads "to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any business or occupation of the insured, other than the automobile business, except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile," indicates an intention to provide liberal coverage for the named insured. (See *McMichael* v. *American Insurance Company* (8th Cir. 1965) 351 F.2d 665; *Harleysville Mut. Cas. Co.* v. *Nationwide Mut. Ins. Co.* (1966) 248 S.C. 398 [150 S.E.2d 233; *United Services Auto. Ass'n.* v. *Crandall* (1979) 95 Nev. 334 [594 P.2d 704, 705, 706]; *Employers Commercial Union Ins. Co.* v. *Bertrand, supra*, 306 So.2d 426, 431 (government employees insurance policy).)

■ We conclude when the insurer's policy is read as a whole it covers the named insured's liability arising from any nonbusiness use of any nonowned automobile.

The words of the clause ((b)(2)) regarding permissive use apply only to "any relative." Such requirement does not limit the coverage expressly afforded the named insured.

If the policy does not in fact clearly provide such coverage, it is at least ambiguous with respect to the coverage. It is a rule of long standing that where the meaning of a policy provision is doubtful and the language thereof is fairly susceptible of different constructions, the courts must adopt the construction least favorable to the insurer and most favorable to the insured. Policy provisions designed to cut down, restrict or limit insurance already granted or introductory exceptions or exemptions must be strictly construed against the insurer. Under its policy GIECO is obliged to defend the named insured Charles Bunn and to the extent of the policy limits pay any judgment entered against him.

Judgment reversed and the cause remanded for entry of judgment conformable to this opinion.

Brown (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied June 9, 1981, and the opinion was modified to read as printed above.