## ALLSTATE INSURANCE COMPANY

v.

Leslie N. SANDLER, Karen Sandler, Marguerite Delmar, Melissa Delmar, Mary D. Palmer, Gerard D. Palmer, J.C. Penney Casualty Ins. Co., and Government Employees Ins. Co.

Civ. A. No. 89–3548.

United States District Court,
E.D. Pennsylvania.

Dec. 19, 1990.

William Kennedy, White & Williams, Philadelphia, Pa., for Allstate Ins. Co.

Marc Robert Steinberg, Rubin, Glickman & Steinberg, P.C., Lansdale, Pa., for Leslie N. and Karen Sandler.

Kim R. Plouffe, German, Gallagher & Murtagh, Philadelphia, Pa., for Mary D. and Gerard D. Palmer.

John W. Walter, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for J.C. Penney.

### MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Government Employees Insurance Company (GEICO) seeks a declaration that it need not defend or indemnify Melissa Delmar in a state tort suit under the automotive insurance policy it issued to Marguerite Delmar, who is the named insured and Melissa's mother. The uncontested facts are as follows. In early 1985, Gerard Palmer gave his daughter Mary Palmer blanket permission to use the family car, an Oldsmobile station wagon. He expressly told Mary, however, that she, and only she, was to operate the automobile. Mary used the station wagon virtually every day. On October 27, 1985, Mary allowed her friend, Melissa Delmar, to drive the car, even though Melissa did not have a license or a learner's permit. With Melissa behind the wheel, the two were involved in an auto accident with Leslie Sandler. Sandler and his wife then brought a negligence action against Mr. Palmer, Melissa, and Mary in the Pennsylvania Court of Common Pleas.

GEICO's policy covers the named insured and the named insured's resident relatives

when driving a non-owned automobile. The use, however, "must be with the permission, or reasonably believed to be with the permission, of the owner, and within the scope of that permission." GEICO contends that because Melissa neither had nor reasonably believed that she had Mr. Palmer's permission to operate the station wagon, she is not a "person insured" within the meaning of its policy.

This Court has held previously that Mr. Palmer did not give Melissa express or implied permission to drive the car, *Allstate Ins. Co. v. Sandler*, Civ. No. 89–3548, slip op. at 3–4, 1990 WL 40723 (E.D.Pa. Mar. 30, 1990), and, as Melissa herself recently has acknowledged, she was aware that Mr. Palmer had forbidden others to drive the auto and that her action on October 27, 1985 was contrary to his instructions. There is no question that Melissa did not believe that her use of the station wagon was with Mr. Palmer's consent. On the other hand, the record before the Court also reveals that Melissa had Mary's permission to operate the car at the time of the accident. Although it is not apparent precisely what words Mary spoke to transmit her consent, Mary was a passenger in the auto, and Melissa's use was at the very least with Mary's knowledge and acquiescence. The issue, then, is whether Mary was the "owner" of the car as that term is employed in GEICO's policy.

All concerned agree that Pennsylvania law governs this action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny require a federal court sitting in diversity to apply state substantive law, which includes the authoritative pronouncements of the state's highest judicial tribunal. In the absence of such guidance, the Court must predict how that court would rule if the issue were presented to it. *Hospital Support Serv. v. Kemper Group*, 889 F.2d 1311, 1313 (3d Cir.1989). The Third Circuit has stated:

> To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide.

The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform our analysis. In addition, we may consult treatises, the Restatement, and the works of scholarly commentators.

*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981); *see also West v. AT & T Co.*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

■ Although GEICO's policy does not define the word "owner," it urges the Court to construe the term as meaning the titleholder of the car. There is no reason for such a crabbed interpretation. As the Eight Circuit has noted, the "plain and reasonable meaning" of that word "as applied to motor vehicles includes not only absolute estates but also includes estates less than absolute." *Powell v. Home Indem. Co.*, 343 F.2d 856, 859 (8th Cir.1965). This is true under Pennsylvania law as well. "The certificate of title is in no way controlling on the question of ownership" of an automobile, but "is merely some evidence of it." *Folmar v. Hartford Accident & Indem. Co.*, 242 Pa.Super. 350, 363 A.2d 1304, 1307 (1976). Car ownership is defined in part by additional characteristics, such as possession, dominion, use, and benefit. *Id.* Further, insurance carriers added the limitation "with the permission of the owner" to non-owned automobile clauses in order to defeat liability for harm or damage caused when their insureds' relatives are driving stolen cars—a purpose which can readily be accomplished without restricting the term "owner" to encompass merely the individual who holds legal title to the car. *Carlsson v. Pennsylvania Gen. Ins. Co.*, 214 Pa.Super. 479, 257 A.2d 861, 864 (1969), *aff'd mem.*, 438 Pa. 553, 265 A.2d 520 (1970).

■ Even if one were to assert that the word is fairly susceptible to more than one meaning, the broader sense would have to prevail. Rules of construction in Pennsylvania mandate that any ambiguity in the policy " 'be construed against the insurer,

and in a manner which is more favorable to coverage.' " *Houghton v. American Guaranty Life Ins. Co.*, 692 F.2d 289, 291 (3d Cir.1982) (quoting *Butin v. Continental Ins. Co.*, 583 F.2d 1201, 1207 (3d Cir. 1978)). *Accord Mohn v. American Casualty Co.*, 458 Pa. 576, 326 A.2d 346, 351 (1974); *Cohen v. Erie Indem. Co.*, 288 Pa. Super. 445, 432 A.2d 596, 599, 600 (1981). After all, GEICO could have drafted the policy more narrowly if it had wished its terms to be understood in the most restrictive sense.

For these or similar reasons, many courts have concluded that, under non-owned automobile clauses, the "owner" is not only one who holds legal title, but also one who has "dominion or possession of the automobile and [is] capable of transferring lawful possession to another." *Phillips v. Government Employees Ins. Co.*, 258 F.Supp. 114, 117 (E.D.Tenn.1966) (applying Tennessee law), *rev'd*, 395 F.2d 166 (6th Cir.1968). Indeed, in *Phillips*, the record titleholder had expressly instructed his son not to permit anyone else to drive the car except in an emergency. For a non-urgent reason, the son loaned the car to a friend, who was then involved in a collision. After determining that the use was without the titleholder's consent, the Court nonetheless held that the son, because he had lawful control of the automobile at the time he permitted his friend to take it, was the "owner" of the car within the meaning of GEICO's non-owned automobile provision. Accordingly, the driver's operation was "with the permission of the owner" and the insurance company had a duty to defend him in the underlying tort suit.

Although the Sixth Circuit disagreed with the *Phillips* decision and reversed, 395 F.2d 166 (6th Cir.1968), courts in several jurisdictions have adopted views identical or similar to the one advocated by the district court. *See, e.g., American Mut. Liab. Ins. Co. v. Milwaukee Ins. Co.*, 283 Ala. 414, 218 So.2d 129, 132 (1969); *Government Employees Ins. Co. v. Kinyon*, 119 Cal.App.3d 213, 173 Cal.Rptr. 805, 809–10 (1981); *Maryland Casualty Co. v. Iowa Nat'l Mut. Ins. Co.*, 54 Ill.2d 333, 297 N.E.2d 163, 167–68 (1973); *West-*

*ern States Mut. Ins. Co. v. Verucchi*, 38 Ill.App.3d 266, 347 N.E.2d 63, 65–66 (1976); *Employers Commercial Union Ins. Co. v. Bertrand*, 306 So.2d 426, 429–31 (La.App. 1975); *Johnson v. Aetna Casualty and Sur. Co.*, 274 So.2d 769, 773 (La.App.1973); *United States Fidelity & Guar. Co. v. Safeco Ins. Co.*, 522 S.W.2d 809, 817–18 (Mo.1975); *State Farm Mut. Auto. Ins. Co. v. Zurich Amer. Ins. Co.*, 118 N.J.Super. 84, 286 A.2d 517, 522–23 (1972), *aff'd in part*, 62 N.J. 155, 299 A.2d 704 (1973); *Republic Ins. Co. v. Luna*, 539 S.W.2d 69, 70–71 (Tex.Civ.App.1975); *Farmers Ins. Co. v. USF & G Co.*, 13 Wash.App. 836, 537 P.2d 839, 843–44 (1975). This includes *Carlsson, supra*, the only Pennsylvania decision to address explicitly the issue whether the term "owner" in a non-owned auto clause is limited to the titleholder. The Superior Court quoted the district judge's opinion in *Phillips* at length and with approval. The Court predicts that the Pennsylvania Supreme Court, which affirmed *Carlsson* by memorandum opinion, would do so as well.

On the facts presented here, Melissa had the permission of Mary, the "owner" within the meaning of GEICO's non-owned auto clause, to drive the station wagon. First, as noted earlier, there is no dispute that Mary consented to Melissa's use. Second, at the time she gave her assent, Mary had dominion over and possession of the car and was capable of bestowing lawful possession upon Melissa. Mr. Palmer had given Mary, his daughter, unfettered privilege to drive it herself, which she frequently did. Mary had not stolen the vehicle before she turned it over to Melissa, of course, and GEICO does not argue to the contrary. In consequence, GEICO has a duty to defend and indemnify Melissa against any claims arising out of the use. *See Phillips*, 258 F.Supp. at 117.

GEICO contends that Melissa knew Mr. Palmer was the titleholder. That is not what the record shows. GEICO did not ask Melissa the specific question at her deposition. GEICO's attorney did not distinguish between titleholders and others, but instead merely inquired whether she

knew "whose" car it was. Melissa testified in response that she did not know whether the car belonged to Mr. Palmer. Indeed, she went on to state that "I just believed that it was a family car, but Mary drove it more than anybody else, so I guess I would think it was mainly her car." Nor is there evidence that anyone or anything communicated to Melissa facts concerning who held title.

Even if GEICO's reading of the record were correct, however, Melissa's knowledge regarding the titleholder is not material. Melissa in fact had permission from Mary, the "owner" of the car under GEICO's policy. The insurance contract, which does not supply a definition of the term "owner," requires nothing more. Although the Court acknowledges that this aspect of today's decision conflicts with the result in *Government Employees Ins. Co. v. Kinyon*, 119 Cal.App.3d 213, 173 Cal. Rptr. 805, 809–10 (1981), which is factually similar to this case, and with some dicta in *Carlsson*, those opinions are not persuasive on the issue.

*Kinyon* also involved an unlicensed 15 year old and a non-owned auto policy which provided coverage if the relative of the insured had the permission or reasonably believed he had the permission of the car's "owner." The teenager was involved in an accident while driving a friend's grandfather's truck, which had been in the lawful possession of his friend at the time permission was obtained. Although the driver reasonably believed that he had his friend's consent to operate the vehicle, he also was aware that the grandfather held title to the truck and that the grandfather expressly had instructed his friend not to let anyone else drive it. The California court determined that the use was excluded from coverage because the driver could not have reasonably believed that his friend's permission "was the consent of the owner [i.e., the grandfather] transmitted through a known permittee. He knew who the owner was. He knew no consent obtained from that source." 173 Cal.Rptr. at 811 (emphasis deleted).

The contours of the rule fashioned in *Kinyon* and dicta to the same effect in *Carlsson*, however, are inconsistent with the reasoning expressed in those decisions. First, although the California court had accepted that the term "owner" embraces both those who hold title and those who are in lawful possession, it essentially smuggled back into its holding the more restrictive meaning of the word by deeming the titleholder to be the true owner and the sole individual capable of dispensing consent. This fails to give proper recognition to the principle that, just as with any piece of property, more than one person may be "the owner" of a car. The dispositive question, as *Phillips* instructs, is whether the person allowing the use was in lawful possession of the car and therefore the "owner" for purposes of the non-owned automobile clause. Second, the exclusionary clause's purpose is to immunize an insurer from liability when the policyholder's resident relative is driving a car that he or she has stolen. That is the risk which GEICO intended to obviate. Yet, a car does not become stolen, as a matter of law or commonsense, just because its lawful possessor turns the vehicle over to a permittee for a particular use, even if the permittee knows that the titleholder has forbidden him or her to drive it. *See* 18 Pa.Cons.Stat.Ann. §§ 3901 & 3921(a); *Safeco*, 522 S.W.2d at 818.

The variant interpretations of Allstate's omnibus clause, which was the subject of the Court's prior Memorandum, and GEICO's non-owned automobile provision are, of course, a function of the policies' differing terms and purposes. Neither the pertinent language chosen by GEICO nor the end it was designed to achieve suggests that Melissa's use should be excluded from coverage. An order follows.

### ORDER

AND NOW, this 19th day of December, 1990, for the reasons set forth in this Court's Memorandum of December 19, 1990;

IT IS ORDERED that Government Employees Insurance Company's Motion for Summary Judgment is DENIED;

AND IT IS FURTHER ORDERED that it is DECLARED that under Government Employees Insurance Company policy No. 388–09–770, issued to Marguerite Delmar, Government Employees Insurance Company is required to defend Melissa Delmar against any lawsuits, actions, or claims which have arisen or may arise out of the automobile accident of October 27, 1985, and to indemnify Melissa Delmar in the event that she is held liable or otherwise responsible for damages, injuries, or losses which have arisen or may arise out of the automobile accident of October 27, 1985.