AMMIE W. TRUELOVE v. NATIONWIDE MUTUAL INSURANCE COMPANY, A CORPORATION

No. 6911SC280

(Filed 2 July 1969)

1. Insurance § 87— automobile liability policy — omnibus clause — permission of owner's son to drive vehicle

Driver who was operating an automobile with permission of the owner's son is not covered by the omnibus clause of the owner's liability policy where the son, although having permission to operate the automobile, had no specific authorization from the owner to select another permittee to operate the automobile.

2. Insurance § 87— automobile liability policy — omnibus clause — non-owned vehicle — permission of owner to drive vehicle

Insured's son was not covered under the omnibus clause of insured's automobile liability policy while driving an automobile owned by the mother of a casual friend where the son, an unlicensed minor, drove the automobile with permission of the owner's son but had no express permission from the owner to drive the automobile and had no grounds reasonably to believe that he had such permission.

APPEAL by plaintiff from *Ragsdale, S.J.*, February 1969 Civil Session, HARNETT County Superior Court.

Ammie W. Truelove (plaintiff) sustained personal injuries and property damage on 21 June 1965 as the result of the actionable negligence of Stephen Ray Godwin (Stephen), who was operating a 1962 Pontiac automobile owned by Louise McMillan Smith (Louise). Plaintiff procured a judgment on 22 March 1968 against Stephen in the amount of $10,000.00 for personal injuries and $500.00 for property damage. Execution was issued on this judgment, and it was returned unsatisfied on 12 August 1968.

On 21 June 1965 Stephen was living with his father, Thurman

Columbus Godwin, (Thurman) as a member of his family. Thurman owned a Plymouth automobile which was covered by an insurance policy issued by Nationwide Mutual Insurance Company (defendant). This policy designated Thurman as the named insured and provided under the omnibus clause that a resident of his household was covered when operating the Plymouth automobile or when operating a non-owned automobile if same was being operated "with the permission, or reasonably believed to be with the permission, of the owner" of the non-owned automobile.

The Pontiac automobile was also covered by an insurance policy issued by the defendant. The omnibus clause of this policy provided coverage for "any other person using such automobile, provided the actual use thereof is with the permission of the named insured."

At the close of the evidence for the plaintiff, the defendant moved for judgment of involuntary nonsuit. This motion was allowed and the action was dismissed. The plaintiff thereupon excepted and appealed to this Court.

*Bryan, Bryan & Johnson by Robert Bryan for plaintiff appellant.*

*Smith, Leach, Anderson & Dorsett by Willis Smith, Jr., for defendant appellee.*

CAMPBELL, J.

The only question presented by this appeal is whether Stephen was covered under the omnibus clause of either the Plymouth or Pontiac automobile liability insurance policy as an insured at the time of the collision with the plaintiff on 21 June 1965.

On 21 June 1965 Louise's seventeen-year-old son, E. W. Smith, III, (Gene) lived with his parents as a member of the family. Gene, a licensed driver, had his own set of keys to the Pontiac automobile, which he drove whenever he wanted to, subject to the priority of his mother and father. Gene had never been instructed one way or the other as to whether he could permit anyone else to drive this vehicle. He remembered having let only one person drive it prior to 21 June 1965. Gene had known Stephen for about three or four weeks prior to the collision, but he did not know how old Stephen was. Gene had seen Stephen driving Thurman's Plymouth automobile on at least two occasions, but he had never seen a member of the Godwin family present. On the evening of 21 June 1965, Gene was driving the Pontiac automobile and Stephen was riding with him. After taking Louise to a meeting, Gene drove to Erwin, where he stopped at a friend's house. He told Stephen that he wanted to

stay there for about five or ten minutes and "he asked Stephen to take the car and drive it around for five or ten minutes and then come back and pick [him] up." It was during this interval that Stephen had the wreck wherein the plaintiff was injured and his automobile damaged.

Louise testified that, although Gene had general use of the Pontiac automobile, he always got her permission to drive it; she had never given Gene any instructions one way or the other about letting anyone else drive the vehicle and, as far as she knew, Gene had never permitted anyone else to drive it; she did not know of any occasion when any person other than a member of her family had driven her automobile; she had not given Stephen permission to use it and she had never known Stephen to drive it; Gene had met Stephen a few weeks prior to the collision at a church camp; Stephen had been to her home once or twice with Gene, and on those occasions he had been brought to her home by members of the Godwin family.

On 21 June 1965 Stephen was fifteen years old and he had no operator's license or learner's permit.

**[1]** When viewed in the light most favorable to the plaintiff, giving him the benefit of all legitimate inferences and resolving all contradictions and inconsistencies in his favor, the nonsuit was improper if the evidence would have permitted a legitimate inference that, at the time of the accident, Stephen was driving the Pontiac automobile with the permission of Louise, the named insured. In this case the facts were not in dispute and a question of law alone is presented.

In *Bailey v. Insurance Co.*, 265 N.C. 675, 144 S.E. 2d 898, the daughter of the named insured customarily used the vehicle and frequently permitted others to drive it. On the occasion there involved, she had taken the vehicle out of town to visit a schoolmate, whom she frequently let drive and with whom she left the vehicle while she went elsewhere. The schoolmate in turn let her boyfriend drive the vehicle and he was driving at the time of the accident there involved. The Supreme Court held that the boyfriend did not have permission, express or implied, to operate the vehicle, and he was, therefore, not covered by the omnibus clause of the liability insurance policy. The Supreme Court stated:

> "The owner's permission for the use of the insured vehicle may be expressed or, under certain circumstances, it may be inferred. 'Where express permission is relied upon it must be of an affirm-

ative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference. On the other hand, implied permission involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent'. . . . However, the relationship between the owner and the user, such as kinship, social ties, and the purpose of the use, all have bearing on the critical question of the owner's implied permission for the actual use. . . .

. . .

. . . Ordinarily, one permittee does not have authority to select another permittee without specific authorization from the named insured. . . ."

[1]   In the instant case Gene, as a permittee to drive the Pontiac automobile, was "without specific authorization" from Louise, the named insured, to select another permittee. The omnibus clause of the policy on the Pontiac automobile did not cover Stephen under these circumstances.

[2]   Stephen knew he was under age and had no license or permit to drive an automobile. He knew Louise, the owner of the Pontiac, only casually as the mother of his new friend Gene. He knew he had no express permission from Louise to drive her Pontiac automobile. He knew he had never driven the Pontiac before. He had absolutely no grounds reasonably to believe he had permission to drive the Pontiac. Therefore, Stephen was not protected or covered by the omnibus clause of the Plymouth automobile.

North Carolina has interpreted the omnibus clause in automobile liability insurance policies "according to the 'moderate' rule." *Bailey v. Insurance Co., supra. Torres v. Smith,* 269 N.C. 546, 153 S.E. 2d 129; *Rhiner v. Insurance Co.,* 272 N.C. 737, 158 S.E. 2d 891.

Affirmed.

BROCK and MORRIS, JJ., concur.