NATIONWIDE MUTUAL INSURANCE COMPANY v. ANDREW
CURRIE CHANTOS

No. 7510SC3

(Filed 7 May 1975)

1. **Insurance § 87— permission to drive from original permitee — driver in lawful possession of vehicle**

    Absent other extenuating circumstances, a person driving an automobile only with the permission of a permittee is not considered as using the automobile with either the express or implied permission of the owner so as to create omnibus clause coverage; however, where the original permittee, the son of insureds, gave defendant express permission to use the vehicle, defendant was thereby made a person in "lawful possession" under G.S. 20-279.21(b)(2).

2. **Insurance § 112— reimbursement of insurer — "insured's" demand for coverage under policy — summary judgment improper**

    For the plaintiff to be able to invoke the reimbursement provision of an automobile liability insurance policy against defendant who was the "insured" referred to in the policy, it would be necessary that the defendant actively and positively seek protection under the policy; the trial court erred in granting summary judgment for defendant in plaintiff's action to recover under the reimbursement provision of the policy where a genuine issue existed relative to defendant's demand upon plaintiff for coverage under the policy.

3. **Infants § 2— contractual obligations — disaffirmance eight months after majority — summary judgment improper**

    The trial court erred in entering summary judgment for plaintiff where a genuine issue existed relative to defendant's disaffirmance of any contractual obligations he may have incurred during his minority by accepting benefits under an automobile liability policy, since defendant did not expressly disaffirm the obligations until eight months after reaching his majority, and the determination of the reasonableness of the eight month period was a question for the jury.

APPEAL by plaintiff from *McLelland, Judge*. Judgment entered 10 October 1974 in Superior Court, WAKE County. Heard in the Court of Appeals 13 March 1975.

On 19 February 1973, plaintiff filed this action seeking to recover from the defendant the sum of $9,581.25, plus interest, for reimbursement under a policy of automobile liability insurance issued by plaintiff to Mr. and Mrs. David E. Williams. Plaintiff alleges that on 30 January 1971, Mrs. Williams entrusted her 1965 Mustang automobile to her minor son, who in turn gave the defendant, another minor, permission to use the car. While operating the car, the defendant, through his

negligence, collided with an automobile being driven by Charles
E. McDonald, causing him severe injuries. McDonald subsequently made a claim to recover for bodily injuries against the
defendant, and the defendant sought coverage and protection
under plaintiff's policy in favor of the Williamses. Plaintiff
notified defendant that he did not have the permission of the
named insureds under the policy to drive the automobile and
further notified him that it was reserving all rights and defenses under the various provisions of its policy. Plaintiff proceeded in good faith to handle and settle McDonald's claim
against the defendant for the sum of $9,581.25. A release which
discharged the defendant from further liability was executed
by McDonald on 5 April 1972. Plaintiff further alleges that
while the defendant was not driving the automobile with either
the express or implied permission of the named insureds, Mr.
and Mrs. Williams, he was, nevertheless, in lawful possession
under G.S. 20-279.21 (b) (2).

The policy contained the following provision:

*"Financial Responsibility Laws*

When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is
afforded by this policy for bodily injury liability or for
property damage liability shall comply with the provisions
of such law to the extent of the coverage and limits of liability required by such law, but in no event in excess of the
limits of liability stated in the policy. The Insured agrees
to reimburse the Company for any payment made by the
Company which it would not have been obligated to make
under the terms of this policy except for the agreement
contained in this paragraph."

By virtue of this provision, plaintiff claims that it is entitled
to reimbursement from the defendant, since it was required to
cover the defendant solely and exclusively because of the financial responsibility laws, and not under the omnibus clause of its
policy.

In answer, the defendant admitted that he was in lawful
possession of the automobile under G.S. 20-279.21 (b) (2); that
plaintiff was the primary liability insurance carrier; and that
plaintiff was legally obligated to afford coverage and protec-

tion to the defendant. He denied all other pertinent parts of the complaint and alleged in defense that on the date of the alleged settlement between plaintiff and McDonald, defendant was a minor; that at no time has defendant entered into any agreement with plaintiff; that if plaintiff contends that defendant entered into any agreement, defendant repudiates such agreement or contract on the grounds that the defendant, at the time any alleged agreement or contract was entered into, was a minor, and that he has not ratified but has denied any such agreements or contracts upon reaching his majority. Defendant further contends that he was not a party to the contract of insurance between the Williamses and plaintiff; that he never entered into any binding agreements with respect to said policy; that he never entered into any binding agreement with plaintiff with respect to plaintiff's obligations under said policy; that he never entered into any agreements with plaintiff with respect to any alleged settlement of claims between plaintiff and McDonald; and that since defendant never entered into any agreements with plaintiff he is not liable to plaintiff under plaintiff's contract of insurance issued to the Williamses.

Plaintiff filed a reply alleging that defendant, during his minority and after attaining his majority, accepted the benefits of the release previously referred to and did not repudiate the release. Having enjoyed the benefits thereof, he ratified the release and is estopped to deny the same.

On 4 April 1973, defendant filed a motion for summary judgment, together with the defendant's affidavit. Plaintiff responded filing one affidavit and various other documents, including the deposition of the defendant. All parts of the aforementioned affidavits and papers which are pertinent to the disposition of this case will be discussed in the opinion.

The trial court after hearing granted defendant's motion for summary judgment. The plaintiff excepted and appealed.

*Ragsdale and Liggett by George R. Ragsdale and Robert R. Gardner for plaintiff.*

*Teague, Johnson, Patterson, Dilthey & Clay by Ronald C. Dilthey for defendant.*

CLARK, Judge.

Summary judgment may ". . . be rendered . . . if the pleadings, depositions, answers to interrogatories, and admis-

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). This remedy is an extreme one and should be awarded only where the truth is quite clear. *Lee v. Shor,* 10 N.C. App. 231, 178 S.E. 2d 101 (1970). The rule does not contemplate that the court is to decide an issue of fact, but rather it impels the court to determine whether a real issue of fact exists. *Keith v. Reddick, Inc.,* 15 N.C. App. 94, 189 S.E. 2d 775 (1972). Lastly, summary judgment ". . . should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. [Citations omitted.] And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom. [Citations omitted.]." *Stevens v. Howard D. Johnson Co.,* 181 F. 2d 390, 394 (4th Cir. 1950). Before applying these principles to the facts in the present case, we are of the opinion that the means by which liability may attach should be discussed, that question under these facts being a novel one in this State.

Prior to 1967, G.S. 20-279.21(b)(2) provided, *inter alia:*

"(b) Such owner's policy of liability insurance:

    \*   \*   \*

    (2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle . . . with the express or implied permission of such named insured. . . ."

In 1967, an amendment added the following language to the above subsection:

". . . or any other persons in lawful possession. . . ." Chapter 1162, § 1, 1967 Session Laws of North Carolina.

Under the above statutory scheme, the plaintiff issued its policy of automobile liability insurance to the Williamses on 22 January 1971. In the omnibus clause of the liability section of that policy, "persons insured" were defined as follows:

"*Persons Insured*

The following are Insureds under Part II:

    (a) with respect to the owned automobile,

(1) the Named Insured and any resident of the same household,

(2) any other person using such automobile with the permission of the Named Insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and

(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an Insured under (a) (1) or (2) above;"

The effects of the above omnibus clause, the provisions of G.S. 20-279.21(b) (2), and the reimbursement provisions referred to previously upon the status of the present defendant become of critical importance in determining the precise nature of the liability alleged. For instance, if it is found as an undisputed fact that the defendant is a permissive user under section (a) (2) of the omnibus clause, then he is an insured under the express provisions of that policy, and the provisions relating to the Financial Responsiblity Laws are inapplicable. However, if it is found as a matter of law upon undisputed facts that the defendant did not have the express or implied permission of the named insureds, Mr. and Mrs. Williams, then the question turns to whether he was nevertheless in "lawful possession" so as to impose upon the insurer the obligation of providing protection under G.S. 20-279.21(b) (2).

[1] The facts as disclosed in the affidavits and documents filed with the motion for summary judgment indicate unequivocally and without dispute that the defendant was driving the car with the express and exclusive permission of the *son* of the named insureds. In that circumstance, it is well established that absent other extenuating circumstances which are not present here, such a person, driving only with the permission of a permittee, is not considered as using the automobile with either the express or implied permission of the owner so as to create omnibus clause coverage. See *Truelove v. Insurance Co.*, 5 N.C. App. 272, 168 S.E. 2d 59 (1969). However, the *original permittee—son* gave the defendant express permission, and this makes him a person in "lawful possession" under G.S. 20-279.21(b) (2). See *Jernigan v. Insurance Co.*, 16 N.C. App. 46, 190 S.E. 2d 866 (1972). The case of *Insurance Co. v. Broughton*, 283 N.C. 309,

196 S.E. 2d 243 (1973), is factually distinct, for in that case, the original permittee had been expressly instructed by the owner pursuant to a car rental agreement not to lend the car to a person under the age of 21 years. There were no similar instructions here. In *Jernigan v. Insurance Co., supra,* at 52, this Court stated that " . . . permission of the named insured *or of the original permittee* is essential to extend coverage to a second permittee" under G.S. 20-279.21 (b) (2) (emphasis added). Absent circumstances similar to those in *Insurance Co. v. Broughton, supra,* it is our opinion that permission expressly granted by the original permittee is sufficient for purposes of the statute to place the second permittee in "lawful possession". Consequently, the defendant in the present case was in lawful possession of the Williamses' automobile. For a discussion of the owner-original permittee-second permittee relationship after *Broughton* and *Jernigan,* see Note, 52 N.C.L. Rev. 809 (1974).

The effect of our holding the defendant to be in lawful possession of the insured automobile, but without the express or implied permission of the named insureds, is to extend coverage to the defendant solely by virtue of (1) the Financial Responsibility Laws and (2) the insurer's concomitant obligation to provide coverage pursuant thereto. However, even though the plaintiff becomes legally obligated to cover defendant, an entirely separate question in contract arises, to wit, how does the defendant become obligated, if at all, to reimburse the plaintiff under the reimbursement provisions of the policy? Problems are suggested in that it is not at all clear who is the "Insured" in the reimbursement provision and it is not suggested how persons other than those in privity to the insurance contract could be bound by such a provision.

In *Employers &c. Ins. Co. v. Byers,* 99 N.H. 455, 457, 114 A. 2d 888, 890 (1955), "[t]he issue to be decided [was] what is meant by 'the insured' in that clause of the policy which provides that for any payment made solely because of the requirements of a financial responsibility law 'the insured' shall reimburse the company." The lawsuit in that case was actually against a named insured under the policy for reimbursement for sums paid out by the company as the result of an accident caused by an additional insured. While such is not the case here, that court stated that the reimbursement provisions " . . . were only meant to apply, in fact, they only have sensible meaning, when the assured is a defendant and when the insurer

has assumed the defence." 99 N.H. at 457. They concluded that " . . . the parties intended that only the insured who invokes the protection of the policy should have the obligation to reimburse the company under the clause in question." 99 N.H. at 457.

[2]  In this case, a sensible reading of the reimbursement provision leads to the conclusion that the defendant was the "insured" referred to in the policy. He was in fact the one being afforded protection thereunder. See generally 5 Federation of Insurance Counsel Quarterly 52 (1954). However, for the plaintiff to be able to invoke the reimbursement provision against this defendant, it would be necessary that the defendant actively and positively seek protection under the policy. If in fact the defendant did seek such protection, it would be our opinion that he could not take the benefits afforded him by the policy without assuming the obligations applicable to him therein. Having established that a cause of action may lie for the plaintiff in this case as a matter of law, we are presented with the first of two essential questions, to wit, is there a genuine issue as to whether the defendant actively sought the protection of the policy in question?

As is disclosed above, the pleadings by the defendant categorically deny that he sought or entered into any agreement with the plaintiff relative to coverage under the policy. In defendant's affidavit filed with his motion for summary judgment, he again denies ever having entered into any agreement relating to McDonald's alleged claim against him, plaintiff's alleged claim for reimbursement under the applicable policy provisions, or plaintiff's settlement of any alleged claims McDonald might have had against him. Defendant also denies that any claim, demand or civil action had been filed against him by McDonald.

In response, plaintiff filed the affidavit of one of plaintiff's district claims managers who stated that he had personally advised the defendant by letter dated 5 November 1971 that the plaintiff was attempting to negotiate a settlement with McDonald as a result of defendant's accident. In another previous letter to the defendant dated 26 April 1971, it was disclosed that a claim had been filed against defendant and that plaintiff understood that defendant was seeking protection under its policy. In that same letter, plaintiff denied defendant coverage

under its policy. Thereafter on 15 June 1971, defendant's attorney forwarded to plaintiff some of defendant's medical bills "pursuant to the medical pay provisions of your insured's policy".

In the defendant's deposition taken on 15 May 1974, he stated that he did talk to an adjuster of the plaintiff relating to the accident, but denies ever having made a demand for coverage under the policy. He further admitted that he realized some two months after the accident that McDonald might file suit against him. This was about the time his parents hired an attorney to handle the criminal case against him. In reference to the letter of 26 April 1971, defendant acknowledged having understood that a claim had been filed against him arising out of his accident, that plaintiff was reserving their rights against him and that he recalled receiving and reading the letter. Thereafter, he stated vaguely that he believed his attorneys replied to the letter and knew now that they actually had. Lastly, dedefendant denied that plaintiff had ever asked him if he wanted protection under the policy or that he had agreed to any of plaintiff's courses of action and that he had never been furnished or even read the policy in question.

Upon these facts, we are of the opinion that a genuine issue exists relative to defendant's demand upon plaintiff for coverage under the policy. There are certain matters which are inconsistent with defendant's denial of such a claim. While the facts in support of plaintiff's position are not necessarily compelling, they are of probative of their position. There is some dispute as to defendant's actual knowledge and actions relative to the events surrounding plaintiff's undertaking to provide him with coverage, and differing inferences may be deduced from the facts. In any event, the credibility of the defendant and witnesses for plaintiff play a vital role in the case. Under these circumstances and on this question, summary judgment was erroneously granted.

[3] The second essential question presented on the facts is whether a genuine issue exists relative to defendant's disaffirmance of any contractual obligations he may have incurred during his minority. Under G.S. 48A-2, effective upon ratification on 17 June 1971, a minor is any person who has not reached the age of 18 years. In G.S. 20-309.1, any person 18 years of age or over is competent to contract for automobile insurance of any kind. Under the first section and by negative implica-

tion of the second, a person under the age of 18 is a minor for purposes of his contracts relating to automobile liability insurance. As such, if the contract of a minor for automobile liability insurance is not considered a necessity, it "may be avoided by him at any time before he reaches his majority or within a reasonable time thereafter." 3 R. Lee, N. C. Family Law, § 273 at 298-99 (1963).

Under the pleadings, it is alleged by the plaintiff that the defendant, having sought coverage under the policy and having continued to accept the benefits of McDonald's release after he attained his majority, is estopped by his ratification to deny that he did not seek plaintiff's protection under the policy in executing the release. In his answer and in his affidavit filed with the motion, defendant expressly disaffirmed any alleged agreement he may have made with plaintiff relative to McDonald's claim against him. Defendant's answer was filed on 21 March 1973 in response to plaintiff's complaint filed 19 February 1973. The facts in the case affirmatively disclose that the defendant became 18 years of age on 25 July 1972. As a consequence, the defendant's silence or acquiescence for eight months after reaching majority may work as an implied ratification, that determination depending upon whether his failure to disaffirm within that eight-month period was within a reasonable time under the general rule previously stated. And what is a reasonable time depends upon the circumstances of each case, no hard-and-fast rule regarding precise time limits being capable of definition. See generally Annot. 5 A.L.R. 2d 7 (1949).

In conclusion, what is a "reasonable time" when the facts are undisputed and different inferences cannot reasonably be drawn from the facts is generally a question of law. "This is one of those general rules, however, which is sometimes difficult of application, and results in the question being left to the jury when it is near the borderline." *Alsam Holding Co. v. Consolidated Taxpayer's Mut. Ins. Co.*, 167 Misc. 732, 4 N.Y.S. 2d 498, 505-06 (1938). Without intimating that this case is or is not near the borderline on what is a "reasonable time," we are of the opinion that that question depends upon the relevant circumstances in the case and is an inquiry in which reasonable men could indulge different inferences from the facts. Consequently, we hold that summary judgment was improvidently granted, and the judgment is reversed and the cause remanded.

Reversed and remanded.

Judges PARKER and HEDRICK concur.