**Kathy Marie COOPER, et al.,**
**Plaintiffs–Appellants,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**Defendant–Appellee.**

**No. 87-8492.**

United States Court of Appeals,
Eleventh Circuit.

July 11, 1988.

William C. Lanham, Johnson & Ward, Clark H. McGehee, Atlanta, Ga., for plaintiffs-appellants.

Mark G. Trigg, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for defendant-appellee.

Before HILL, ANDERSON and GOODWIN*, Circuit Judges.

ANDERSON, Circuit Judge:

The only issue we address on this appeal involves the meaning of a relatively new clause in an automobile insurance policy. Because we find that the district court misinterpreted that clause, we reverse the grant of summary judgment for the defendant and remand for proceedings consistent with this opinion.

## I. The Facts

The events leading to this lawsuit began in Havelock, North Carolina in late 1981. At some time in November or December, David Carlton started dating Kathy Cooper. David was sixteen years old, and Kathy was fourteen years old. On February 12, 1982, David and Kathy skipped school and spent the day at the beach. During the day at the beach, they decided to run away together.

They drove south in a 1973 Toyota owned by Darrell Carlton, David's father. As a general rule, David had used this car whenever he wanted. However, the parties disagree as to whether Mr. Carlton had placed temporary restrictions on David's use of the car shortly before David and Kathy ran away. In any event, David and Kathy drove to Bennettsville, South Carolina the

* Honorable Alfred T. Goodwin, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

first day. They stayed in a Bennettsville hotel for several days during which David gave Kathy informal driving lessons. Kathy had little, if any, previous driving experience, and she had no driver's license nor learner's permit.

After leaving Bennettsville, David and Kathy drove south toward Atlanta. As they approached Atlanta on I–85, David tired of driving. Kathy offered to relieve him. Even though it was raining and Kathy had not perfected the skill of shifting gears, David allowed her to drive. Shortly after Kathy began driving, David told her that they had missed their turn. Kathy swerved and lost control of the car. The car hit Forrest Jamison, a driver changing a flat tire. The accident caused permanent injury to Mr. Jamison.

On March 30, 1983, Mr. Jamison and his wife filed a diversity action in the Northern District of Georgia against Kathy, David, and David's father, Darrell. The Carltons' family insurance carrier, United States Automobile Association ("USAA"), provided primary liability coverage in the amount of $50,000. In addition, Kathy's father, Gerald Cooper, provided notice of the accident to his family insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), and requested that State Farm defend Kathy. Gerald Cooper's policy provided for $100,000 in coverage.

State Farm, however, asserted that Kathy was excluded from the policy and refused to defend her. The Jamisons made a demand that USAA and State Farm settle for their combined policy limits of $150,000. USAA was willing to settle, but State Farm refused. State Farm took no action except to investigate the claim and to enter into a reservation of rights with the Coopers.

The suit was tried in March 1986. The jury returned a verdict against Kathy, David, and Darrell jointly in the amount of $375,000 plus interest. USAA then paid its $50,000 policy limit. This left Kathy, David, and Darrell with liability well in excess of State Farm's $100,000 policy limits.

Shortly after the trial court entered judgment in the original suit, Kathy, David, and Darrell brought this action against State Farm on behalf of the Jamisons.[1] In Count One, they allege that State Farm is liable for failing to defend Kathy and to adjust the claim in the previous action. In Count Two, they allege that State Farm is liable because it negligently failed to settle the claim. The trial court entered summary judgment for State Farm holding that Kathy was excluded from Gerald Cooper's policy. The plaintiffs then brought this appeal.

For purposes of this appeal, the parties do not dispute that Gerald Cooper's policy would generally cover Kathy as a family member. Specifically, the policy provided:

> We [State Farm] will pay damages ... for which any *covered person* becomes legally responsible because of an auto accident....
>
> 'Covered person' as used in this part means: 1. you or any *family member* for the ... use of any auto....

Policy at 4 (emphasis in original).

> 'Family member' means a person related to you by blood ... who is a resident of your household.

Policy at 3 (emphasis in original).

> However, Policy Exclusion A–8 provides:
> We do not provide Liability Coverage for any person: ... 8. Using a vehicle without a reasonable belief that that person is entitled to do so.[2]

---

1. The Jamisons were later added as plaintiffs.

2. This clause differs from the traditional "permissive use" clauses in at least three respects. First, the standard changes from an objective one (permission) to one that is both objective (reasonableness) and subjective (belief). *See Allstate Ins. Co. v. U.S. Fidelity & Guaranty Co.,* 663 F.Supp. 548, 552–55 (W.D.Ark.1987) (illustrating the differences between the old and new policies), *aff'd sub nom., United States Fidelity &*

*Guaranty Co. v. Cumpton,* 846 F.2d 1147 (8th Cir.1988); *Georgia Farm Bureau Mut. Ins. Co. v. Fire & Cas. Ins. Co.,* 180 Ga.App. 777, 350 S.E.2d 325, 326 (1986) ("Under [the new] exclusion the issue is shifted to the state of mind of the user.").

Second, the new clause speaks in terms of entitlement rather than permission. The issue we must determine here is whether these words should be interpreted differently.

Policy at 4. The only issue presented on appeal involves the meaning of Exclusion A–8. State Farm argues that as a matter of law, Kathy could not have reasonably believed that she was entitled to drive Darrell Carlton's car on the day of the accident. Therefore, it claims it owed her no duty under the policy.

The district court held that for Kathy to show a reasonable belief of entitlement, she would have to show a reasonable belief both that she was in lawful possession of the car and that she had the legal right to drive. The court first found that there was a jury question as to whether Kathy had a reasonable belief that she was in lawful possession of the car. It then held that because Kathy could not have reasonably believed that she had the legal right to drive that she was excluded under the policy. On that basis, it granted summary judgment for State Farm. The first question we must address is whether the legal right to drive is a necessary prerequisite to entitlement as used in the exclusionary clause.

## II. The License Issue

■ The parties do not challenge the district court's conclusion that North Carolina law governs this action. Unfortunately, the North Carolina courts apparently have never interpreted this relatively new clause in a reported case. Indeed, we are aware of only fourteen decisions from the entire country interpreting this clause.[3] In most of these decisions, the driver's legal right to drive was not in question, and the possessory right to the car was the only issue.

Two of these cases, however, involved unlicensed drivers, and the courts there squarely faced the issue of whether the legal right to drive is a necessary prerequisite to entitlement. *Canadian Indemnity Co. v. Heflin,* 151 Ariz. 257, 727 P.2d 35 (Ariz.App.1986); *Safeco Ins. Co. v. Davis,* 44 Wash.App. 161, 721 P.2d 550 (1986).[4] In both of these cases, the court interpreted the new "entitlement" clause much as the old "permissive use" clauses were interpreted—i.e. the legal right to drive is merely one factor in determining whether the unlicensed driver had permission.[5] More specifically, *Heflin* and *Davis* held that to show a reasonable belief of entitlement one must only show that he had a reasonable belief that he had the permission of the owner or apparent owner to drive the car. In both *Heflin* and *Davis,* the legal right to drive the car was at most one of several factors considered in determining whether

---

Third, the new clause shifts the focus from the owner's perspective to the driver's. This point is fully discussed in Section III, *infra.*

**3.** *Allstate Ins. Co. v. U.S. Fidelity & Guaranty Co.,* 663 F.Supp. 548 (W.D.Ark.1987); *Dairyland Ins. Co. v. General Accident Ins. Co.,* 435 So.2d 1263 (Ala.1983); *Canadian Indemnity Co. v. Heflin,* 151 Ariz. 257, 727 P.2d 35 (Ariz.App.1986); *Roberts v. U.S. Fidelity & Guaranty Co.,* 498 So.2d 1037 (Fla. 1st Dist.Ct.App.1986); *Georgia Farm Bureau Mut. Ins. Co. v. Fire & Cas. Ins. Co.,* 180 Ga.App. 777, 350 S.E.2d 325 (1986); *Nationwide Mut. Ins. Co. v. Southern Trust Ins. Co.,* 174 Ga.App. 513, 330 S.E.2d 443 (1985); *Robertson v. Lumbermen's Mut. Cas. Co.,* 160 Ga.App. 52, 286 S.E.2d 305 (1981); *Economy Fire & Cas. Co. v. State Farm Mut. Ins. Co.,* 153 Ill.App.3d 378, 106 Ill.Dec. 543, 505 N.E.2d 1334 (1987); *Economy Fire & Cas. Co. v. Kubik,* 142 Ill.App.3d 906, 97 Ill.Dec. 68, 492 N.E.2d 504 (1986); *State Automobile Mut. Ins. Co. v. Ellis,* 700 S.W.2d 801 (Ky.App.1985); *McGuire v. Hartford Ins. Co.,* No. L–86–073, Slip Op. (Ohio App. 1986) (unpublished) [available on WESTLAW, 1986 WL 9378]; *Donegal Mut. Ins. Co. v. Eyler,* 360 Pa.Super. 89, 519 A.2d 1005 (1987); *United*

*Pacific Ins. Co. v. Larsen,* 44 Wash.App. 529, 723 P.2d 8, *rev. denied,* 107 Wash.2d 1012 (1986); *Safeco Ins. Co. v. Davis,* 44 Wash.App. 161, 721 P.2d 550 (1986).

**4.** In a third case, *State Automobile Mut. Ins. Co. v. Ellis,* 700 S.W.2d 801 (Ky.App.1985), the court faced the issue of whether an unlicensed driver was excluded by the entitlement language. The court held for the driver on the ground that the exclusion was ambiguous. However, the court did not specify in what respect the exclusion was ambiguous.

In *Economy Fire & Cas. Co. v. State Farm Mutual Ins. Co.,* 153 Ill.App. 378, 106 Ill.Dec. 543, 505 N.E.2d 1334 (1987), the driver had neither the permission of the owner nor the legal right to drive. The court decided against him on the basis of permission, but it specifically noted and reserved the question of whether the legal right to drive is a necessary prerequisite to entitlement.

**5.** This was the general rule as well as the North Carolina law under permissive use clauses. 4 A.L.R.3d 10, 34–37; *Truelove v. Nationwide Mut. Ins. Co.,* 5 N.C.App. 272, 168 S.E.2d 59 (1969).

the unlicensed driver had the permission of the apparent owner of the car. We know of no reported decisions interpreting the entitlement language which hold to the contrary.

In both *Heflin* and *Davis,* the court reasoned that the policy was ambiguous as to whether the legal right to drive was a prerequisite to entitlement. The court then applied the widely recognized rule that ambiguous provisions in insurance contracts are to be construed against the insurer and found that under this policy language the legal right to drive was not a prerequisite to entitlement.

We agree with the *Heflin* and *Davis* courts that reasonable minds can differ as to whether the legal right to drive is a prerequisite to entitlement. Furthermore, North Carolina adheres to the general rule that ambiguous provisions in insurance policies should be strictly construed against the insurer. *Southeast Airmotive Corp. v. U.S. Fire Ins. Co.,* 78 N.C.App. 418, 337 S.E.2d 167 (1985), *rev. denied,* 316 N.C. 196, 341 S.E.2d 583 (1986); *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.,* 276 N.C. 348, 172 S.E.2d 518 (1970). Consequently, we see no reason to believe that North Carolina would decide the issue any differently than the *Heflin* and *Davis* courts did.

■ We hold that under North Carolina law one need not necessarily show that he had a legal right to drive to establish a reasonable belief of entitlement under the clause at issue here. We further hold that whether the person had a legal right to drive may be one factor bearing on whether that person reasonably believed that he was entitled to use the automobile. The district court erred in granting summary judgment for State Farm on this issue since it is a jury question.

### III. The Second Permittee Issue

This conclusion does not end our inquiry. We may uphold the district court's summary judgment on other grounds if the record supports them. *See, e.g., Church of Scien-*

tology of California v. Cazares, 638 F.2d 1272, 1281 (5th Cir.1981).[6] The record does present an alternative ground on which we might affirm the summary judgment for State Farm.

Under the old "permissive use" clauses, the North Carolina courts have held that "[o]rdinarily, one permittee does not have authority to select another permittee without specific authorization from the named insured. [citations omitted]." *Bailey v. General Ins. Co. of America, Inc.,* 265 N.C. 675, 144 S.E.2d 898, 900 (1965). This principle has been consistently reaffirmed. *Insurance Company of North America v. Aetna Life and Cas. Co.,* 88 N.C.App. 236, 362 S.E.2d 836 (1987), *rev. denied,* 321 N.C. 743, 366 S.E.2d 860 (1988); *Nationwide Mut. Ins. Co. v. Chantos,* 25 N.C.App. 482, 214 S.E.2d 438, *cert. denied,* 287 N.C. 465, 215 S.E.2d 624 (1975); *Truelove v. Nationwide Mut. Ins. Co.,* 5 N.C.App. 272, 168 S.E.2d 59 (1969). Thus, if this principle were applicable to this case, we would affirm because the plaintiffs do not contend that Darrell Carlton ever specifically authorized David to let others drive the car. At most, Darrell never said anything on the subject.

We note first that this is not a permissive use clause case. It involves a new and different clause. Second, this is not a case that falls within the ambit of the North Carolina Motor Vehicle Safety and Financial Responsibility Act. N.C.Gen.Stat. § 20–279.1 et seq. (1983). USAA has already paid the limits required by the statute. Thus, we must interpret the clause as written without regard to the statutory mandates to determine whether Kathy was covered. *See American Tours, Inc. v. Liberty Mut. Ins. Co.,* 315 N.C. 341, 338 S.E.2d 92 (1986).

The clause at issue here is different from the old permissive use clauses. The permissive use clauses focused on the owner's perspective. Specifically, the inquiry centered on whether the owner had expressly or impliedly given permission to the user.

---

**6.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

The entitlement clause reverses the inquiry. It focuses on how the situation appeared to the user of the automobile. Thus, this issue is not controlled by the North Carolina cases cited above which held under the old permissive use clauses that the first permittee had to have specific authorization to select a second permittee.[7]

The entitlement clause requires us to ask whether the permittee had a reasonable belief that he was entitled to use the car. It is not unreasonable for a second permittee (in this case, Kathy) to assume that a first permittee (in this case, David) has authority to delegate the permission to drive when the first permittee has possession of the car and apparent authority with respect to it. Thus, that second permittee can reasonably believe that she is entitled to use the car even though she has no actual permission from the owner.

We believe that this reasoning is consistent with the opinions of the North Carolina courts. The North Carolina courts have consistently applied a broad rule to second permittees when deciding whether they were in "lawful possession" for purposes of coverage under the financial responsibility laws. *See, e.g., Nationwide Mut. Ins. Co. v. Chantos*, 214 S.E.2d 438; *Insurance Co. of North America v. Aetna Life and Cas. Co.*, 362 S.E.2d 836. Although the concept of lawful possession is not the equivalent of entitlement, we do think that lawful possession is closely analogous to entitlement because it focuses on the perspective of the user rather than the owner. Thus, we think the lawful possession analysis in these cases is more persuasive as to how we should interpret entitlement than is the permissive use analysis.[8]

We now apply this conclusion to the facts of this case. Although there is ample evidence from which the jury might find that Kathy did not reasonably believe she had permission to drive, there is also evidence that David, the first permittee,[9] did in fact grant her permission to drive. Kathy has testified that she believed that the permission David gave her entitled her to drive when he was in the car. Thus, we agree with the district court that genuine issues of fact remain on this point, and they must be tried.[10]

## IV. Conclusion

The district court erroneously ruled that the legal right to drive was a prerequisite to entitlement under the policy clause at issue. Based on that ruling, it erroneously

---

7. Nor do the cases from other jurisdictions interpreting this clause shed much light on this issue. *See* footnote 3, *supra. Heflin*, 727 P.2d 35, and *Davis*, 721 P.2d 550, appear to apply a broader rule to the permittee problem, but they do not discuss the issue in detail. *Dairyland Insurance*, 435 So.2d 1263, applies a strict rule, similar to the North Carolina permissive use rule, without discussing why it would be applicable under the language of the clause at issue here.

    *Allstate Ins. Co.*, 663 F.Supp. 548, and *McGuire*, Slip Op., also involve second permittees. In *Allstate Ins. Co.*, the court found that the second permittee could not have reasonably believed that he had permission from the first permittee. In *McGuire*, the court found that the first permittee did not have the permission of the owner and that the second permittee could not have reasonably believed that the first permittee had permission.

8. The two analyses often appear side by side in the same case because the lawful possession analysis governs the coverage up to the financial responsibility law limits and the permissive use analysis governs beyond that point.

9. For purposes of this appeal, we assume, without deciding, that David had the permission of Darrell to drive the car on the date of the accident. The parties have not argued to the contrary on appeal.

10. Although the effect of our decision is to follow the old North Carolina permissive use law on the license issue, see footnote 5, *supra*, but not on the second permittee issue, we see no inconsistency in our position. With respect to the license issue, there is nothing in the language of the new entitlement clause nor in the case law to suggest any departure from the general rule and the North Carolina case law holding that the legal right to drive was just one factor in determining whether a person had permission under the old permissive use clause. By contrast, with respect to the second permittee issue, the language of the new entitlement clause and the North Carolina case law interpreting the lawful possession clause both indicate that a second permittee (Kathy in this case) might have a reasonable belief of entitlement if a first permittee (David in this case) grants permission and has possession of the car and apparent authority with respect to it.

concluded that Kathy could not have reasonably believed that she was entitled to drive the car because she had no legal right to drive. For this reason, we reverse the judgment of the district court and remand for proceedings consistent with this opinion.

REVERSED and REMANDED.