986 F.2d 1426
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 AMERICAN GENERAL FIRE AND CASUALTY COMPANY, Plaintiff-Appellant,
v.
ESTATE OF Tanya SANCHEZ, Travelers Insurance Company,
Defendants-Appellees.
 No. 91-2215.
 United States Court of Appeals, Tenth Circuit.
 Feb. 9, 1993.
 
 Before LOGAN, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 INTRODUCTION
 
 2
 This is a diversity declaratory judgement action brought by American General Fire and Casualty Company to determine coverage under an automobile insurance policy which it issued to Shirley A. Martinez. On June 14, 1987, the insured Martinez automobile was involved in a collision while being driven by Tanya Sanchez,[1] a nonfamily member who was fourteen years old and unlicensed. American General sought a declaration that its policy did not cover Tanya at the time of the collision by virtue of the following policy exclusion:
 
 
 3
 A. We do not provide liability coverage for any person--
 
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 8. Using a vehicle without a reasonable belief that that person is entitled to do so.
 
 
 7
 Appellant's App. at 39-40 (emphasis added).
 
 
 8
 The district court held that Tanya had a reasonable belief of entitlement and that, therefore, the American General policy provided coverage. On appeal, American General presents a legal argument and a sufficiency of the evidence argument in favor of reversal. The legal issue is whether, under New Mexico case law relating to implied consent in the context of permissive use insurance clauses, Tanya had no entitlement as a matter of law to use the Martinez automobile. We hold that implied consent/permissive use analysis does not apply to this type of exclusion clause, and that the findings of the district court relating to Tanya's reasonable belief of entitlement are not clearly erroneous. Accordingly, we affirm the judgment of the district court.
 
 I.
 BACKGROUND
 
 9
 American General states that it does not challenge the district court's findings of fact, but only "the court's ultimate conclusion as to the reasonableness of Tanya Sanchez' belief that she was entitled to use the" Martinez vehicle in question. Appellant's Opening Brief at 2, n. 1. Thus, while there is considerable dispute regarding peripheral facts, the central facts upon which this case turns are mostly undisputed.
 
 
 10
 The insured, Ms. Martinez, owned two vehicles, a 1978 Ford Econoline van and a 1984 Mustang. On June 14, 1987, at about 10:30 a.m., Ms. Martinez, her daughter Melissa (Missy), and her brother drove the van to the home of Anna Messer, a lifelong friend of Ms. Martinez. Ms. Messer was not at home, but her fourteen-year-old daughter, Tanya Sanchez, was. Tanya had only recently moved back into town, and did not have either a longstanding or close relationship with Ms. Martinez or any of her children. Nevertheless, Ms. Martinez invited Tanya to spend the day with her.
 
 
 11
 During the day Ms. Martinez, knowing Tanya was fourteen and not a licensed driver, permitted Tanya to drive the van on two different occasions for a total of approximately one half hour. On the first occasion Ms. Martinez was going to the store with only Tanya in the van. Appellee's App. at 10. Tanya asked if she could drive, stating that her mother "doesn't mind," id., and she was allowed to do so. Later in the afternoon, Ms. Martinez took her fourteen-year-old daughter Nana Salaz, Melissa, Tanya and Tanya's younger sister Jamie, in the van to "cruise" to and about the nearby small town of La Jara. Nana drove from the house to La Jara, with Tanya in the front seat and Ms. Martinez and the two younger children in the rear seats. In La Jara Tanya asked Nana if she could drive and Nana acquiesced without comment. Ms. Martinez said nothing. Tanya then drove the van in and about La Jara for a period of up to half an hour. Id. at 55. This was a significant portion of the outing, which consumed about an hour in total.
 
 
 12
 During the day, including the two occasions when Tanya asked and was allowed to drive, she was not denied driving privileges, or cautioned or conditioned with respect to driving the Martinez van. Nor was Nana cautioned, limited or denied by Martinez in Tanya's presence with respect to driving privileges. In short, nothing was said with respect to driving privileges.
 
 
 13
 The group returned from La Jara to the Martinez residence and Ms. Martinez took a nap. About an hour later Tanya and Nana decided to take Ms. Martinez' Mustang and "cruise" looking for Nana's boyfriend, Randy Velarde. Nana did not wake her mother to ask permission because she took it for granted that she could use the Mustang. Appellee's App. at 36-37. On the way from the house to the Mustang the girls encountered Tanya's mother, Anna Messer, who was sitting some distance away on the lawn with Ms. Martinez' brother. Id. at 43. Ms. Messer asked Nana if it was "okay" for her to use the auto and Nana, in Tanya's hearing, replied that it was. Id. No words were exchanged between Nana and Tanya at that time or subsequently regarding any restrictions on the driving or being allowed to drive the Mustang.
 
 
 14
 Shortly after leaving the Martinez residence, the girls and Randy spotted each other. Randy pulled his pickup over at a church parking lot. Nana parked the Mustang close by. She then got out, leaving the keys in the ignition, and went over to Randy's truck to talk. After a minute or two, id. at 38, Tanya, still in the Mustang, communicated to Nana that she was going for a ride, to which Nana either said nothing or "Yeah, right." Id. at 38, 58.
 
 
 15
 Tanya then drove away in the Mustang. Randy asked Nana if he should follow and Nana replied "Yeah, I guess." Id. at 59. About two miles down the road Tanya lost control of the car and collided head-on with a vehicle, injuring its three occupants (insureds of the appellee, Travelers Insurance Company). Tanya was killed. Prior to the day of this accident Tanya had had no contact or experience with Ms. Martinez or Nana relating to the use of automobiles.
 
 
 16
 Based on these facts the district court found and concluded, among other things, as follows:
 
 
 17
 Considering Tanya Sanchez's young age, which was 14 at the time of the occurrence on June 14, 1987, and the conduct of Shirley Martinez and Nana Salaz, at the time that Tanya Sanchez began driving the 1984 Mustang during the late afternoon of June 14, 1987, she was not using the Mustang without a reasonable belief that she was entitled to do so.
 
 
 18
 Based on these findings, I conclude that Tanya Sanchez, at the time of the accident on June 14, 1987, was an insured under the policy issued by the Plaintiff in that she was, under section B.2. of the Insuring Agreement in part A. of the liability coverage, a person using a covered automobile.
 
 
 19
 Further, I conclude that at the time of the accident on June 14th, 1987, Tanya Sanchez was not excluded from coverage under the policy of American General Fire and Casualty Company by reason of exclusion Number 8.a.....
 
 
 20
 Appellant's Opening Brief, Attachment, at 17-18.
 
 
 21
 We review the district court's findings of fact for clear error, Ouezada v. County of Bernalillo, 944 F.2d 710, 714 (10th Cir.1991); Fed.R.Civ.P. 52(a), and its legal conclusions as to coverage de novo. FDIC v. Kansas Bankers Surety Co., 963 F.2d 289, 294 (10th Cir.1992). We review de novo the district court's determinations of state law. Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991); Mares v. ConAgra Poultry Co., 971 F.2d 492, 495 (10th Cir.1992).
 
 II.
 DISCUSSION
 A.
 
 22
 The parties agree that there is no New Mexico law, and no provision of the American General policy, defining the reasonable belief of entitlement clause. However, there is law in New Mexico construing permissive use clauses and the issue of implied consent under those clauses. It is American General's position that "the determination of reasonable belief is comparable to a determination of implied consent." Appellant's Opening Brief at 5. Implied consent, in turn, rests upon an examination of the conduct of the owner. Id. According to American General, under New Mexico law, if the evidence shows--as American General argues that it does here--that the owner prohibited the operation of the insured vehicle by anyone other than the owner's permittee, then, as a matter of law, a second permittee does not have the owner's impled consent to drive. Id. at 6, citing Gruger v. Western Cas. & Surety Ins. Co., 555 P.2d 683 (N.M.1986). From this reasoning we are urged to find that as a matter of New Mexico law it was legally impossible for Tanya to have had a reasonable belief that she was entitled to drive the Mustang; therefore she was excluded from coverage under the American General policy.
 
 
 23
 We are unpersuaded by this argument because we do not accept the basic premise. There is a distinct difference in analysis between permissive use clauses, upon which the implied consent cases rest, and reasonable belief of entitlement clauses. The former focus on what the owner said or reasonably conveyed; the latter focus on the user's view of the situation. In Cooper v. State Farm Mutual, 849 F.2d 496, 499-500 (11th Cir.1988), the Eleventh Circuit drew such a distinction, stating:
 
 
 24
 The clause at issue here is different from the old permissive use clauses. The permissive use clauses focused on the owner's perspective. Specifically, the inquiry centered on whether the owner had expressly or impliedly given permission to the user. The entitlement clause reverses the inquiry. It focuses on how the situation appeared to the user of the automobile ... [and] requires us to ask whether the permittee had a reasonable belief that he was entitled to use the car.
 
 
 25
 The only case cited by American General in support of a contrary view is Indiana Lumberman's Mutual Ins. Co. v. Hartford Accident & Indemnity Co., 454 S.W.2d 781 (Tex.Civ.App.1970). That case is distinguishable on a number of grounds, and unpersuasive.
 
 
 26
 We believe that the New Mexico Supreme Court would adopt the view expressed by the Eleventh Circuit in Cooper, and hold that the district court was correct in construing the evidence as to entitlement from Tanya's point of view, and did not err by failing to apply New Mexico law relating to implied permission.[2]
 
 B.
 
 27
 American General also contends that in any event whatever belief Tanya entertained regarding her entitlement to use the Mustang, the evidence clearly fails to support a finding that such belief was reasonable. Appellant's Opening Brief at 7. It emphasizes the differences between Tanya's being allowed to drive a 1978 van with the owner present to supervise both permission and use, and her use of the newer Mustang under different circumstances and without express permission. It also asserts that the district court erred by relating Nana's past use of the Mustang to Tanya's belief as to entitlement. In addition, there are the facts that Tanya had no close prior relationship with either Ms. Martinez or Nana, and no prior history relating to the use of the vehicles owned by Ms. Martinez.
 
 
 28
 Few cases have interpreted the entitlement clause's "reasonable belief" language, and still fewer are instructive as to exactly what might support such a belief under facts even somewhat similar to the ones before us. Generally, the cases either deal with situations in which the user knows some crucial fact that destroys any possibility that a belief of entitlement could be "reasonable", see, e.g., Dairyland v. General Accident Ins. Co., 435 S.2d 1263, 1264 (Ala.1983) (user knew that owner did not want user to drive car at any time); Georgia Farm Bureau Mutual v. Fire & Casualty Ins., 350 S.E.2d 325, 326 (Ga.App.1986) (user knew that permission would be denied if requested); Donegal Mutual Ins. Co. v. Eyler, 519 A.2d 1005, 1009 (Pa.Super.1987) (user knew he was driving the car without the owner's permission), or in which the relationship between the user and the owner is such that the user could not form a reasonable belief of entitlement, Allstate Ins. Co. v. U.S.F. & G., 663 F.Supp. 548, 554 (W.D.Ark.1987) (user had been permitted many times to drive owner's vehicle, but always with owner's express permission; thus, user could form no reasonable belief that he was entitled to take the vehicle without such express permission), aff'd sub nom. U.S.F. & G. v. Cumpton, 846 F.2d 1147 (8th Cir.1988); Nationwide Mutual Ins. Co. v. Southern Trust Ins. Co., 330 S.E.2d 443, 444-45 (Ga.App.1985) (mechanic could not reasonably believe that he was entitled to drive customer's car for pleasure, despite mechanic's practice of doing so regularly); Robertson v. Lumbermen's Mutual Casualty Co., 286 S.E.2d 305, 307-308 (Ga.App.1981), (estrangement and impending divorce, combined with previous transfer of title of car to wife, precluded husband's reasonable belief of entitlement), overruled on other grounds, Grange Mutual Ins. Co. v. Brinkley, 355 S.E.2d 767, 768 (Ga.App.1987); Economy Fire & Casualty Co. v. State Farm Mutual Ins. Co., 505 N.E.2d 1334, 1337 (Ill.App.1987) (previous transfer of title to girlfriend, combined with forcible taking of keys after assault of girlfriend, was clear evidence that user did not have reasonable belief of entitlement).
 
 
 29
 Ultimately the facts of each case must govern since the determination of reasonable belief of entitlement is one of fact, not law. We have carefully reviewed the record and conclude that the district court's finding that Tanya had a reasonable belief that she was entitled to drive the Mustang is not clearly erroneous. Thus, the court's conclusion that coverage under the American General policy extended to Tanya must be affirmed.
 
 CONCLUSION
 
 30
 For the reasons stated, we AFFIRM the judgment of the district court.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The record and briefs contain various spellings of the names of both Tanya Sanchez and Nana Salaz. See, e.g., Appellee's App. at 54. As a matter of convenience we adopt the spellings used by both appellant and the district court reporter
 
 
 [2]
 In adopting the reasoning of the Eleventh Circuit, we also concur with those jurisdictions that have held that the term "entitled" in the clause does not refer specifically to either legal entitlement or the owner's permission. Inasmuch as the primary inquiry focuses on the user's state of mind, the form of entitlement is irrelevant as long as the user felt she had it. See General Accident Fire & Life Assurance Corp. v. Perry, 541 A.2d 1340, 1348-49 (Md.App.), cert. denied, 547 A.2d 189 (Md.1988); cf. Wallen v. Acosta, 799 F.Supp. 83, 85 (D.Kan.1992) (collecting cases)