**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1385**

ALLY BAKER,

                    Plaintiff - Appellant,

          v.

ADIDAS AMERICA, INCORPORATED,

                    Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Louise W. Flanagan, Chief District Judge. (5:07-cv-00168-FL)

Argued:  May 14, 2009                    Decided:  June 30, 2009

Before NIEMEYER, MOTZ, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Allison S. H. Ficken, DOVIN MALKIN & FICKEN, LLC, Atlanta, Georgia, for Appellant. Robert Meynardie, THE MEYNARDIE LAW FIRM, PLLC, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Edward J. Dovin, DOVIN MALKIN & FICKEN, LLC, Atlanta, Georgia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ally Baker appeals an order of the district court dismissing her action on the basis of improper venue. See Fed. R. Civ. P. 12(b)(3). Finding no error, we affirm.

I.

Baker, a resident of Raleigh, North Carolina, was an outstanding junior tennis player who achieved national and international success as an amateur. While she was a junior, Adidas provided free merchandise for her to use during tournaments.

In August 2002, at the age of 16, Baker turned professional, and in March 2003, Baker hired an agent to handle endorsement agreements. Still a minor, she entered into a "Representation Agreement" with SFX Sports Group, who was to serve as Baker's exclusive representative for marketing negotiations. The agreement guaranteed $150,000 to Baker to be paid by SFX in installments over a two-year period. It also provided that whatever money she made through agreements SFX secured would be retained by SFX and applied to the guarantee until it was repaid. Baker and her father both signed this agreement.

Subsequently, on or about April 10, 2003, Baker—still a minor—signed an endorsement agreement with Adidas International

2

Marketing BV ("Adidas International"), which is headquartered in Amsterdam, the Netherlands, and which is the corporate grandparent of defendant Adidas America, Inc ("Adidas America"). The agreement was retroactively effective as of January 1, 2003. Pursuant to this agreement (the "Adidas Agreement"), Baker agreed to wear Adidas footwear and apparel for $20,000 in the first year of the contract and for $25,000 per year for each of the final two years, and Adidas agreed to pay certain performance bonuses. Baker expressly appointed her agent SFX to receive, on her behalf, payments from Adidas International that came due under the Adidas Agreement. Baker agreed that any payment from Adidas International to her agent completed Adidas International's duty to pay her, and Baker agreed that, for purposes of the Adidas Agreement, any revocation of her appointment of SFX as her agent would be in writing. Finally, the Adidas Agreement provided that any claim of Baker's arising out of, or relating to the agreement would be governed by the law of the Netherlands and settled by Amsterdam courts.[1]

---

[1] The agreement provided, however, that "[A]didas International shall additionally be entitled, at its sole option, to bring proceedings against [Baker] in the courts competent for" Baker. J.A. 40.

In 2003, the first year of the Adidas Agreement, Adidas International wired two $10,000 payments to SFX for Baker. Adidas also shipped shoes and clothes to Baker, which she wore while playing tennis.

In January 2004, Baker began experiencing problems with her left foot and withdrew from her tournament schedule. In April, Adidas International sent a representative from Portland, Oregon to North Carolina to examine Baker's foot and the shoes she was using. During this timeframe, Adidas International also made payment to SFX for Baker's travel expenses for a training camp. On April 10, 2004, Baker turned 18.

On April 19, 2004, Adidas International sent another payment to SFX for Baker in the amount of $12,500. In May 2004, the company flew Baker to Portland to try a redesigned shoe and gave her additional merchandise while she was there. The redesigned shoes did not help Baker. In October 2004, Adidas International wired $12,500 to SFX for Baker, thus completing its contractual obligation to pay Baker a $25,000 endorsement fee for the 2004 contract year.

In November 2004, with Baker still injured, Adidas International suspended further payments to her under Section 10 of the Adidas Agreement, which permitted suspension of payments "[w]ithout prejudice to the right to terminate th[e] Agreement" if Baker became unable to compete at world-class level for six

4

months or more. J.A. 39. After undergoing surgeries and therapy, Baker was unable to recover and retired in 2005.

On August 4, 2005, Baker and SFX entered into an agreement and release terminating the Representation Agreement and "settl[ing] all issues between them." J.A. 149. Simultaneous with the termination of SFX's representation of Baker, Baker received a $24,716.50 payment from SFX, which she deposited in a bank account that she held jointly with her father.

In a letter dated December 20, 2006, from Baker's attorney to Adidas International, counsel stated, "Now that Ms. Baker has reached the age of majority, you are hereby notified that she has elected to declare the Agreement void. Accordingly, the jurisdictional provisions and limitations of liability set forth in the Agreement are unenforceable." J.A. 146.

In 2007, Baker brought this action against Adidas America in North Carolina state court, alleging that the shoes selected for her caused her injuries and ended her career. The complaint asserts a negligence claim and claims alleging breaches of the implied warranty of fitness for a particular purpose and the implied warranty of merchantability.

Adidas America removed the action to federal court and moved to dismiss under Rule 12(b)(3) for improper venue, pointing to the forum-selection clause contained in the Adidas Agreement. In her deposition, Baker stated that she did not

5

remember signing the Adidas Agreement although she acknowledged that her signature is on it. She also stated that she was not aware of the payments that were made to her under that agreement. In his deposition, Baker's father, who did not sign the agreement, contended he did not even know the agreement existed until about the time this suit was initiated.

The district court granted Adidas America's motion to dismiss. The court reasoned that since Baker entered into the Adidas Agreement—which contained the forum-selection clause—when she was a minor, it was voidable at her election under North Carolina law within a reasonable time after she reached the age of 18.[2] The court noted that Baker clearly authorized SFX under the Adidas Agreement to accept payments from Adidas International and that SFX in fact received $25,000 in such payments after Baker turned 18. The court concluded that regardless of whether Baker had actual knowledge of the payments, knowledge of them was imputed to her because SFX was her agent. The court also noted that, after Baker turned 18, she allowed Adidas International to attempt to redesign shoes for her and to fly her the next month to Portland, Oregon, for the same purpose. The court concluded that Baker's "failure to

---

[2] The parties agree that North Carolina law controls regarding this issue.

undertake the steps necessary to disaffirm the [Adidas] Agreement within a reasonable time, combined with defendant's continued performance of the contract through payments to SFX, requires this court to reject plaintiff's arguments that the contract is avoidable due to age or proper disaffirmation." J.A. 163.

Because the forum-selection clause was prima facie valid, the district court concluded that the burden was on Baker to demonstrate that it should not be enforced under federal law. The court concluded that the mere fact that Amsterdam was a foreign forum did not automatically allow Baker to avoid the clause. The court also determined that application of the clause would not contravene North Carolina public policy, specifically N.C. Gen. Stat. § 22B-3 (2009), because that statute applies only to contracts entered into in North Carolina, and Baker had not demonstrated that the agreement was finalized in North Carolina.

Baker now appeals the grant of Adidas America's motion to dismiss.

## II.

The validity of a forum-selection clause is properly analyzed under Federal Rule of Civil Procedure 12(b)(3), and we review the district court's disposition of such a motion de

7

novo.  See Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006).

## A.

Baker first argues that she did not ratify the Adidas Agreement after she turned 18 and that the district court therefore erred in concluding that she was bound by it under North Carolina law.  We disagree.

Under North Carolina law, "agreements or contracts, except for those dealing with necessities and those authorized by statute, are voidable at the election of the infant and may be disaffirmed by the infant during minority or within a reasonable time of reaching majority."  Creech v. Melnik, 556 S.E.2d 587, 591 (N.C. Ct. App. 2001) (internal quotation marks omitted). What constitutes a reasonable time in this context "depends upon the circumstances of each case, no hard-and-fast rule regarding precise time limits being capable of definition."  Nationwide Mut. Ins. Co. v. Chantos, 214 S.E.2d 438, 444 (N.C. Ct. App. 1975).  "The privilege of disaffirmance may be lost where the infant affirms or otherwise ratifies the contract after reaching majority."  Bobby Floars Toyota, Inc. v. Smith, 269 S.E.2d 320, 322 (N.C. Ct. App. 1980).

Here, after turning 18, Baker accepted two payments from Adidas International totaling $25,000.  The second payment was

8

received more than six months after her eighteenth birthday.[3] She also accepted Adidas International's attempt to redesign her shoes, as well as other merchandise at no charge to her one month after her birthday. After receiving all of these benefits, it was not until two years later—more than 32 months after she achieved the age of majority—that Baker communicated to Adidas International that she wished to void her contract. Under the facts of this case, this delay constituted an unreasonable length of time to elect disaffirmance.[4] Cf. Bobby Floars Toyota, 269 S.E.2d at 322-23 (holding that minor waited an unreasonable length of time to void purchase money security agreement to finance automobile when he continued to drive the vehicle and make payments on it for 10 months after reaching majority). In any event, Baker's acceptance of the two payments

---

[3] Baker claims that it was her agent, SFX, that actually received the payments, but under North Carolina law, a principal is liable for the acts of her agent that are within the scope of the agent's authority. See Harris v. Ray Johnson Constr. Co., 534 S.E.2d 653, 655 (N.C. Ct. App. 2000).

[4] Baker argues that she stopped performing under the contract when she became injured in that she did not engage in competitive tennis after that and that Adidas International stopped performing when it suspended payments to her because of her injury. However, none of the conduct identified by Baker even constitutes a breach of the agreement, let alone a manifestation of an intention to void it.

and other benefits after turning 18 "constituted a ratification of the contract, precluding subsequent disaffirmance." Id. at 323; see McCormic v. Leggett, 53 N.C. (8 Jones) 425, at *2 (1862) (holding that when minor sold real property, he ratified the sale by accepting payment after reaching age of majority).[5]

B.

In The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972), the Supreme Court held that forum-selection provisions are presumptively valid and should be enforced absent a clear showing that enforcement would be "unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching," or that enforcement "would contravene a strong public policy of the forum in which suit is brought." Baker maintains that the district court erred in ruling that she could not avoid the forum-selection clause here on that basis. We disagree.

Baker contends that the forum-selection clause "was obtained through overreaching" in that "[A]didas went around

---

[5] Baker argues alternatively that the forum-selection clause cannot be enforced because the injury for which she seeks compensation in this lawsuit occurred before she turned 18. Even assuming that the time of her injury had some relevance, the agreement was certainly not void at that time. Her status as an infant made the contract voidable, not void, during the time that she was a minor, and she did not disavow the contract during that time.

Baker's father and her attorney and dealt directly with her when she was only 16." Brief of Appellant at 26. In this regard, Baker argues that the forum-selection clause contravenes the public policy "protecting minors from being taken advantage of in unfair bargains at a time when the law recognizes they are too young to adequately protect their own interests." Id. at 30. Baker's allegation notwithstanding, the "Agreement and Release" entered into by SFX and Baker specifically recites that the Adidas Agreement was "negotiated by SFX," J.A. 150, which was precisely the arrangement contemplated when Baker contracted with SFX to negotiate such contracts on her behalf. The notion that Adidas International was somehow taking advantage of an uncounseled sixteen-year-old is simply without basis in the record.

Baker additionally argues that the forum-selection clause's chosen forum, Amsterdam, is too inconvenient to her to be enforced. We disagree.

"[W]here it can be said with reasonable assurance that at the time [of the making of] the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience," such inconvenience will not generally warrant setting aside the clause. The Bremen, 407 U.S. at 16. However, if the party challenging the clause demonstrates "that trial in the contractual forum will be so

11

gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," the clause may be avoided. Id. at 18.

Baker contends that Amsterdam "has no connection to the parties or events at issue." Brief of Appellant at 27. Without citation to the record, Baker claims that "all of the witnesses are in the United States, most in North Carolina." Id. at 29. Defendant responds, however, that "Baker's claims are based upon the use of a tennis shoe that was designed and thoroughly tested in Europe, where a number of potential witnesses are located." Brief of Appellee at 29. Additionally, Adidas International, the party with whom Baker contracted, is headquartered in Amsterdam. Thus, Baker has failed to show a lack of connection between this case and the chosen forum.

Baker further maintains, though, that she is only "a college student at [the University of North Carolina] with no source of income" and that "Amsterdam does not permit contingency fee arrangements." Brief of Appellant at 29. She therefore argues that she "cannot afford the extraordinary expense of traveling to Amsterdam and paying for attorneys there to prosecute these claims." Id. On this basis, she contends that the forum-selection clause should not be enforced. However, especially because Baker has not demonstrated that these burdens were unforeseeable to her when she ratified the

agreement, we do not believe Baker has shown that enforcement of the forum-selection clause would be unjust.  Cf. Paper Express, Ltd. v. Pfankuch Maschinen GmbH, 972 F.2d 753, 758 (7th Cir. 1992) (holding that additional expense and inconvenience of litigating in foreign forum did not justify avoidance of forum-selection clause because plaintiff "was presumably compensated for this burden by way of the consideration it received under the contract").  We therefore conclude that the district court properly enforced the clause.

### III.

In sum, finding no error in the district court's decision, we affirm.

AFFIRMED

13